Sabrina L. Shadi (205405)
BAKER & HOSTETLER LLP
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA  90067-4508
Telephone:      310.820.8800
Facsimile:      310.820.8859
Email:          sshadi@bakerlaw.com

Attorneys for Plaintiff
ARHAUS, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARHAUS, LLC, a Delaware limited liability company,<br><br>                Plaintiff,<br><br>    v.<br><br>RESTORATION HARDWARE, INC. D/B/A RH, a Delaware corporation, and LISA CHI, an individual,<br><br>                Defendants. | Case No.:<br><br>**COMPLAINT** |

Plaintiff Arhaus, LLC ("Arhaus" or "Plaintiff") alleges as follows:

## NATURE OF ACTION

1.      Defendants Lisa Chi ("Chi") and Restoration Hardware, Inc. ("RH") misappropriated confidential information and trade secrets that Chi acquired while employed by Arhaus in a position of trust as Chief Merchandising Officer in order to gain a competitive advantage in the market, with Chi breaching her Confidentiality Agreement with Arhaus in the process.

## THE PARTIES

2.      Plaintiff, Arhaus, LLC ("Plaintiff") is, and at all relevant times referenced herein was, a limited liability company organized and existing under the laws of Delaware with its principal place of business in Boston Heights, Ohio.

3.     On information and belief, Defendant Restoration Hardware, Inc., is, and at all relevant times hereto was, a Delaware corporation with its principal place of business in Corte Madera, California.

4.     On information and belief, Defendant Lisa Chi, is, and at all relevant times hereto was, an individual who is a resident of Ross, California.

5.     Arhaus is informed and believes, and based upon such information and belief alleges, that Defendants, at all times relevant hereto, conspired and acted in concert with other defendants to commit the wrongs against Arhaus alleged herein, and in doing so were at all relevant times the agents, servants, employees, principals, joint venturers, alter egos, co-conspirators and/or partners of each other. Arhaus is further informed and believes, and based upon such information and belief alleges, that in doing the things alleged in this Complaint, each Defendant was acting within the scope of authority conferred upon that defendant by the consent, approval, and/or ratification of the other Defendants, whether said authority was actual or apparent.

**JURISDICTION**

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1836, *et seq.* (the Defend Trade Secrets Act of 2016); 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1367 (supplemental jurisdiction).

7.     This Court has personal jurisdiction because (a) Defendant Chi is a citizen of California and resides in this judicial district, and (b) Defendant RH is engaged in substantial, continuous, and systematic activities within California, including: conducting regular business with California and this judicial district, selling and/or offering products from locations in California and this judicial district, engaging in contractual relations with California companies, and employing agents in California.

**DIVISIONAL ASSIGNMENT**

8.     Arhaus, LLC is informed and believes, and based upon such information and belief alleges, that this Court is the proper venue, and according to Civil L.R. 3-2(d), this Division is the proper division because (a) Defendant Chi resides in Marin County, California, (b) Defendant RH operates a business in California and has its headquarters and does business in Marin County,

- 2 -

California; and (c) the events giving rise to the claims raised in this Complaint occurred in California, including in Marin County, California.

## FACTUAL BACKGROUND

### *Arhaus, LLC's Business*

9. Since 1986, Arhaus has been in the business of designing and selling upscale home furnishings through its retail stores and catalogs.

10. Arhaus is a well-known and respected brand.

11. Arhaus' Trade Secrets and Confidential Information are critical to the success of its business.

12. Arhaus invests and continues to invest significant time, intellect, money, and other resources to protect its Trade Secrets and Confidential Information, which Arhaus employees contractually agree to hold in the strictest confidence and not use or disclose in any unauthorized manner per the Confidentiality Agreement.

### *Chi's Key Position of Trust at Arhaus*

13. Chi served as Arhaus' Chief Merchandising Officer (CMO) from July 1, 2021 until May 16, 2025, where she oversaw the full product lifecycle from concept to customer.

14. In her role as CMO at Arhaus, Chi provided strategy leadership across many of Arhaus' departments which were interwoven and essential to the company's performance, including Product Development, Buying, Merchandise Planning & Allocation (MP&A), Sourcing & Quality, and TB Arhaus Upholstery.

15. On November 16, 2022, Chi signed a Confidentiality Agreement with Arhaus, a copy of which is attached as Exhibit A (the "Confidentiality Agreement"), recognizing that she was in a position of trust with Arhaus, recognizing and accepting the continuing duty of loyalty she owed Arhaus stemming from that position of trust, and agreeing not to, among other things, engage in any unauthorized use or disclosure of Arhaus' Confidential Information, which was a continuing contractual obligation that survived beyond termination of employment with Arhaus.

16. As part of signing the Confidentiality Agreement, Chi agreed that Arhaus' items of Confidential Information are valuable assets and have economic value, actual and potential,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -
**COMPLAINT**

because they are not generally known by the public or others who could use them to their own economic benefit and/or to the competitive disadvantage of Arhaus, and thus, should be treated as Arhaus' trade secrets.

17.     The Confidentiality Agreement details the position of trust and duty of loyalty as follows:

> **Position of Trust.** By entering into this Agreement and accepting the equity award provided by Company, Employee agrees and acknowledges that Company has granted the equity award(s) to Employee to secure Employee's commitment to advance and promote the business interests and objectives of Company. Employee further agrees and acknowledges that, in Employee's role as a key member of the executive and/or management team of Company or an affiliate of Company, Employee has been entrusted with, and will continue to be entrusted with, Company's Confidential Information, goodwill of customers, clients, and vendors, and business relationships.

> **Duty of Loyalty and Conflicts of Interest.** During employment, Employee will dedicate all of Employee's working time to Company and use best efforts to perform the duties assigned, remain loyal, comply with Company policies and procedures, and avoid conflicts of interest. It shall be considered a conflict of interest for Employee to knowingly assist or take steps to form or further a competing business enterprise while employed with Company. Employee will promptly inform Company of any business opportunities related to Company's lines of business that Employee becomes aware of during employment, and any such opportunities shall be considered the intellectual property of Company whether pursued by Company or not. Nothing in this Agreement shall eliminate, reduce, or otherwise remove any legal duties or obligations that Employee would otherwise have to Company through common law or statute.

18.     The Confidentiality Agreement defines Confidential Information as follows:

> **Definition of Confidential Information**. "**Confidential Information**" refers to an item of information, or a compilation of information, in any form (tangible or intangible), related to Company's business that Company has not made public or authorized public disclosure of, and that is not generally known to the public or to other persons who might obtain value or competitive advantage from its disclosure or use. Confidential Information will not lose its protected status under this Agreement if it becomes generally known to the public or to other persons through improper means such as the unauthorized use or disclosure of the information by Employee or another person. Confidential Information includes, but is not limited to: (a) Company's business plans and analysis, customer, client and prospect lists, Company store information, customer/client documents and information (including contact information, preferences, margins, order guides, and order histories) internal reports, internal business-related communications, marketing plans and strategies, research and development data, data compilations regarding buying practices,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

human resources information obtained from a confidential personnel file (such as internal evaluations of the performance, capability and potential of any Employee of Company affiliates), financial reports, operational analysis data, methods, techniques, technical data, know-how, innovations, computer programs, un-patented inventions, and trade secrets; and (b) information about the business affairs of third parties (including, but not limited to, clients and acquisition targets) that such third parties provide to Company in confidence. Confidential Information will include trade secrets, but an item of Confidential Information need not qualify as a trade secret to be protected by this Agreement. Company's confidential exchange of information with a third party for business purposes will not remove it from protection under this Agreement. Employee acknowledges that items of Confidential Information are Company's valuable assets and have economic value, actual or potential, because they are not generally known by the public or others who could use them to their own economic benefit and/or to the competitive disadvantage of Company, and thus, should be treated as Company's trade secrets. Confidential Information does not include information lawfully acquired by a non-management employee about wages, hours or other terms and conditions of non-management employees if used by them for purposes protected by Section 7 of the National Labor Relations Act (the NLRA) such as joining or forming a union, engaging in collective bargaining, or engaging in other concerted activity for their mutual aid or protection.

19.    The Confidentiality Agreement details unauthorized use and disclosure as follows:

**Unauthorized Use or Disclosure.** Employee agrees to not engage in any unauthorized use or disclosure of Confidential Information (as defined above), or knowingly use Confidential Information to harm or compromise the interests of Company. The foregoing restriction will apply throughout Employee's employment and thereafter for so long as the information at issue continues to qualify as a trade secret or Confidential Information as defined above. Employee understands this means Employee may not use or disclose Confidential Information in any manner that is not within the course and scope of employment with Company and undertaken for the benefit of Company. If compelled to disclose information via court order, subpoena, or other legal mandate, Employee will give Company as much written notice as possible under the circumstances, will refrain from use or disclosure for as long as the law allows, and will cooperate with Company to protect such information, including taking every reasonable step to protect against unnecessary disclosure. However, nothing in this Agreement, including the foregoing, prevents Employee from communicating with the EEOC, the SEC, the DOL, or any other governmental authority, making a report in good faith and with a reasonable belief of any violations of law or regulation to a governmental authority, or cooperating with or participating in a legal proceeding relating to such violations. Employee is also strictly prohibited from using any prior employer's confidential information, documents, or materials in Employee's position at Company. Just as the Company take measures to protect Confidential Information, the Company respects prior employer's similar right and prohibits use of any of prior employer confidential information in performing Employee's work for

- 5 -

4934-9375-4453.3

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Company.  If Company determines that Employee has possession of, or is using a previous employer's confidential information, Employee may be subject to discipline up to, and including, termination of employment.

### *Chi's Access and Storage of Confidential Information*

20.     Throughout her time employed by Arhaus, Chi had access to Arhaus' proprietary, trade secret, and Confidential Information, and she routinely requested or gave access to such proprietary, trade secret, and Confidential Information to her personal email account, lisachi823@gmail.com as well as other Google storage devices and/or spaces she had access to such as Google Docs.

21.     On April 1, 2021, Chi forwarded an email titled "Business Recap 3.31.21" from her Arhaus email account to  lisachi823@gmail.com, her personal email address. This email included budgetary, sales, and inventory information. Attached to this email was a sales recap spreadsheet, which included a weekly breakdown of Arhaus' March sales and inventory information.

22.     On April 9, 2021, Chi forwarded an email titled "2021 Historical Sales" from her Arhaus email account to her personal email address. Attached to this email was a historical sales spreadsheet, which included a breakdown of Arhaus' historical sales, 2021 forecast, and future sales targets by category.

23.     On April 27, 2021, Chi forwarded an email titled "5 year LRP" from her Arhaus email account to her personal email address. Attached to the email was the presentation outlining Arhaus' 4 Year Plan, which included information regarding sales, inventory, and strategy.

24.     On June 7, 2021, Chi forwarded an email without a subject line from her Arhaus email account to her personal email address. This email discussed significant production issues related to one of Arhaus' suppliers. Attached to this email was a year-to-date order flow for the Arhaus supplier.

25.     On July 12, 2021, Chi forwarded an email titled "2022 PD Budget Templates" from her Arhaus email account to her personal email address. Attached to this email is the 2022 PD Expense Template, detailing Arhaus budget, expense, and projection information.

**COMPLAINT**

4934-9375-4453.3

26.     On January 2, 2024, Chi asked an individual, who was at the time an Arhaus employee but is now employed by RH, to give access to the Quarterly Business Review template to her personal email address. On January 3, 2024, the former Arhaus employee responded to the request via email with a message that stated "Added[,]" indicating that he had granted access to Chi's personal email account.

27.     On January 22, 2024, Jaclyn Collier sent an email titled "RE: Fabric Docs" to Chi's Arhaus email address and personal email address. This email included links to Google Docs for fabric presentations. Attached to this email were three documents: Arhaus' fabric strategy diagram, the New Arhaus Fabric Strategy, and the Arhaus Design Center Fabric Update.

28.     On February 9, 2024, Chi sent an email titled "Re: PDF to help marketing" to Annalisa Cruz, Erin Harmon, David Dimos, Kelly Brown, Alexandra Urge, and Brittni Scheuring, asking for access to a marketing PDF document on Google docs to be granted to her personal email address.

29.     On August 5, 2024, Chi sent an email titled "Arte Immortal Curation Deck for Meeting Tomorrow/costs" from her Arhaus account to her personal email address and to Kim Wilson. This email discusses strategy and references RH pricing.

30.     On February 26, 2025, Kevin Whitley sent an email titled "Fall" to Chi's Arhaus email address and personal email address, pursuant to Chi's regular practice of requesting that Arhaus content be sent to her personal email address. Attached to this email was a draft of the Fall 2025 Arhaus Catalog, among the most closely-guarded trade secrets and pieces of Confidential Information at Arhaus.

31.     On April 10, 2025, Chi received an email titled "I: Bellina March Reorders" which was sent to her Arhaus email address and her personal email address. Attached to this email were documents titled "Bellina Projections 4.8"; "Bellina Open PO – 4.7.25 – CJ Notes"; and "Copy of Bellina Priority SKU List 4.7.25."

32.     On April 29, 2025, Chi forwarded an email titled "China Sourcing %" from her Arhaus email account to her personal email address. This email is labeled "Privileged and

**COMPLAINT**

4934-9375-4453.3

Confidential" at the top. Attached to the email were the Arhaus 1Q 2025 Earnings Script and the Arhaus Sourcing Slides.

33.    All of the documents, presentations, catalogs, and emails enumerated in Paragraphs 21-32 contain Arhaus Trade Secrets and/or Confidential Information, which are protected from unauthorized use and/or disclosure under the Confidentiality Agreement for as long as such information qualifies as Trade Secret information or Confidential Information. The instances cited in Paragraphs 21-32 are merely examples of Chi's extensive transfer of Arhaus' Trade Secrets and/or Confidential Information to her personal email and Google accounts.

*Chi's Misappropriation of Arhaus' Trade Secrets and Confidential Information*

34.    On information and belief, in the first quarter of 2025, Chi began preparing to leave Arhaus and join RH.

35.    As part of her preparations to leave Arhaus and join RH, Chi met with RH's CEO, Gary Friedman, for several hours to discuss Chi joining RH, one of Arhaus' primary competitors. On information and belief, Chi and Friedman discussed the Trade Secrets and/or Confidential Information belonging to Arhaus that Chi could bring with her to RH and utilize for the benefit of RH.

36.    On May 16, 2025, Chi left Arhaus' employ and started working for RH as President, Co-Chief Merchandising & Creative Officer, where she would be responsible for co-leading Product Development, Merchandising, Inventory Planning, Sourcing, Manufacturing, and Marketing, across RH's Physical, Print, and Digital platforms.

37.    After Chi became an executive at RH, Chi still had access to Arhaus' Confidential Information and Trade Secrets through her personal email address and Google account, to which she had granted access to many Arhaus documents while working as CMO at Arhaus.

38.    On information and belief, Chi accessed and disclosed such Arhaus Confidential Information and Trade Secrets, including Arhaus' Fall 2025 Catalog, to the team at RH, which includes herself.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

39.    RH's products and marketing materials have begun to resemble and replicate Arhaus' products and marketing materials, including their product styles, collection selection, lifestyle imagery, and catalog.

40.    By using and disclosing Arhaus' Trade Secrets and Confidential Information to RH, Chi has misappropriated Arhaus' Trade Secrets and Confidential Information in violation of California Civil Code § 3426, California Business and Professions Code § 17200, California Labor Code § 2860, and in violation of the Arhaus Confidentiality Agreement that she signed. As a result, Arhaus has suffered irreparable harm.

41.    By using Arhaus' Trade Secrets and Confidential Information for its benefit, RH has misappropriated Arhaus' Trade Secrets and Confidential Information in violation of California Civil Code § 3426 and California Business and Professions Code § 17200,

## FIRST CAUSE OF ACTION

**(Misappropriation of Trade Secrets – Civil Code § 3426 *et seq.* – Against all Defendants)**

42.    Arhaus re-alleges and incorporates by this reference each and every foregoing paragraph of this Complaint, as though set forth in full.

43.    Arhaus' Trade Secrets and Confidential Information include information that derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use and are subject to efforts that are reasonable under the circumstances to maintain their secrecy.

44.    While employed by Arhaus, Chi had access to sensitive, proprietary Trade Secrets and Confidential Information, including but not limited to Arhaus' business plans and analysis, customer, client and prospect lists, Arhaus store information, customer/client documents and information (including contact information, preferences, margins, order guides, and order histories) internal reports, internal business-related communications, marketing plans and strategies, research and development data, data compilations regarding buying practices, human resources information obtained from a confidential personnel file (such as internal evaluations of the performance, capability and potential of any Employee of Arhaus affiliates), financial reports, operational analysis data, methods, techniques, technical data, know-how, innovations, computer

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

**COMPLAINT**

programs, un-patented inventions, and trade secrets; and information about the business affairs of third parties (including, but not limited to, clients and acquisition targets) that such third parties provide to Arhaus in confidence. Per the terms of the Confidentiality Agreement, Confidential Information includes trade secrets, but an item of Confidential Information need not qualify as a trade secret to be protected by this Agreement.

45.     Chi shared Arhaus' Trade Secrets and Confidential Information, including the Fall 2025 Catalog, with RH, who is using them to Arhaus' detriment.

46.     Chi and RH have retained and used Arhaus' Trade Secrets and Confidential Information and have disclosed these trade secrets for Chi's own benefit and the benefit of RH.

47.     Chi was aware that she was under a duty not to disclose or use Arhaus' Trade Secrets or Confidential Information.  Neither Defendant has been authorized by Arhaus to use or disclose its Trade Secrets or Confidential Information.

48.     As a direct and proximate result of Chi and RH's misappropriations, Arhaus has suffered and continues to suffer actual damages in an amount to be proven at trial, in excess of the minimum jurisdiction of this Court.

49.     As a further direct and proximate result of Defendants' misappropriation, Defendants have been, individually and/or in concert, unjustly enriched in an amount to be proven at trial, in excess of the minimum jurisdiction of this Court.

50.     Chi's conduct as described above was willful and malicious and done with the deliberate intent to injure Arhaus and benefit herself and RH, causing injury to Arhaus.  Such actions were malicious, oppressive and constituted despicable conduct in conscious disregard of Arhaus' rights, and by reason thereof, Arhaus is entitled to reasonable attorneys' fees and costs, and punitive damages under California Civil Code §3426.3.

51.     Unless restrained and enjoined, Chi and RH will continue to misappropriate Arhaus' Trade Secrets and Confidential Information, causing irreparable harm to Arhaus.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**COMPLAINT**

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## SECOND CAUSE OF ACTION

### (Common Law Misappropriation of Trade Secrets and Confidential Information – Pled in the Alternative Against all Defendants)

52.     Arhaus re-alleges and incorporates by this reference each and every foregoing paragraph of this Complaint, as though set forth in full.

53.     Arhaus' Trade Secrets and Confidential Information include information that derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and such Trade Secrets and Confidential Information are subject to efforts that are reasonable under the circumstances to maintain their secrecy.

54.     Chi has retained and used Arhaus' Trade Secrets and Confidential Information and has disclosed these Trade Secrets and Confidential information for Chi's benefit and especially for RH's benefit.

55.     Chi was aware that she was under a continuing duty not to disclose or use Arhaus' Trade Secrets or Confidential Information.

56.     None of the Defendants have been authorized by Arhaus to use or disclose its Trade Secrets or Confidential Information.

57.     Unless restrained and enjoined, Chi and RH will continue to threaten to misappropriate or actually misappropriate all or part of Arhaus' Trade Secrets and Confidential Information, causing irreparable harm to Arhaus.

## THIRD CAUSE OF ACTION

### (Breach of Confidentiality Agreement - Against Defendant Lisa Chi)

58.     Arhaus re-alleges and incorporates by reference each and every foregoing paragraph, as though set forth in full.

59.     In connection with her employment by Arhaus, Chi entered into a valid and binding Confidentiality Agreement.

60.     Chi received legally sufficient consideration to support the Confidentiality Agreement, including an "equity award."

**COMPLAINT**

61.    Arhaus has performed all terms, conditions, covenants, and promises required on its part to be performed in accordance with the Confidentiality Agreement.

62.    Chi's actions, as described above, constitute a direct, substantial, and material breach of Sections 1.2 and 2.2 of the Confidentiality Agreement.

63.    The Confidentiality Agreement contains a choice of law provision that states that the Confidentiality Agreement is governed by the laws of the State of California.

64.    Chi's breaches of the Confidentiality Agreement have directly and proximately caused Arhaus to suffer damages in an amount to be proven at trial, in excess of the minimum jurisdictional requirement of this court.

65.    An award of monetary damages will not adequately compensate Arhaus for the damages it has incurred, and will continue to incur, by reason of Chi's breaches of the Confidentiality Agreement. Unless the Confidentiality Agreement is enforced, as to Chi's use or disclosure of Arhaus' Trade Secrets and Confidential Information, Chi will continue to breach the Confidentiality Agreement, causing irreparable harm to Arhaus.

66.    Pursuant to Section 3 of the Confidentiality Agreement, Arhaus is entitled to specific performance, injunctive relief, attorney's fees and costs of obtaining relief, and any other legal or equitable relief or remedy allowed by law.

## FOURTH CAUSE OF ACTION

### (Unfair Business Practices – Business & Professions Code § 17200 *et seq.* – Against All Defendants)

67.    Arhaus re-alleges and incorporates by reference each and every foregoing paragraph, as though set forth in full.

68.    The Defendants' actions constitute unfair business practices under Business & Professions Code § 17200 *et seq.*  In particular, Chi and RH have unfairly and deceptively misappropriated and retained Confidential Information obtained through Chi's employment at Arhaus.

69.    Chi and RH have used and are using Arhaus' Confidential Information to steal Arhaus' customers.

4934-9375-4453.3

70.     By committing the acts alleged in this Complaint, Chi and RH have committed unfair business practices.

71.     Unless restrained and enjoined, the Defendants will continue to commit unfair business practices and Arhaus will be irreparably harmed.

72.     Arhaus seeks an award of its attorneys' fees and costs associated with the bringing of this action under Business and Professions Code § 17200.

## FIFTH CAUSE OF ACTION

### (Common Law Unfair Competition – Against All Defendants)

73.     Arhaus re-alleges and incorporates by reference each and every foregoing paragraph, as though set forth in full.

74.     The Defendants' actions, as alleged in this Complaint, constitute unfair competition.

75.     As a result of the Defendants' actions, as alleged in this Complaint, the value of Arhaus' business has been diminished and Arhaus has suffered other damages, in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

### (Violation of Labor Code § 2860 – Against Defendant Lisa Chi)

76.     Arhaus re-alleges and incorporates by reference each and every foregoing paragraph, as though set forth in full.

77.     Labor Code § 2860 provides that everything that an employee acquires by virtue of his employment, except the compensation due him, belongs to the employer, whether acquired lawfully or unlawfully or during or after his employment.

78.     Arhaus is informed and believes and thereon alleges that prior to and after Chi's separation from Arhaus and subsequent employment by competitor RH, Chi took and misappropriated Arhaus' Trade Secrets and other Confidential Information which belonged to Arhaus, in violation of the requirements and obligations imposed on Chi under Labor Code § 2860.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**COMPLAINT**

4934-9375-4453.3

79.     As a result of Chi's violation of the duties and obligations imposed on her by Labor Code § 2860, Arhaus has and will in the future suffer damage and injury in an amount according to proof at the time of trial, and Chi has been unjustly enriched.

80.     In addition, unless Chi is restrained and enjoined from further use and disclosure and is required to return the Trade Secrets and other Confidential Information to Arhaus, Arhaus will suffer irreparable harm.

**SEVENTH CAUSE OF ACTION**

**(Violation of Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* – Against All Defendants)**

81.     Arhaus re-alleges and incorporates by reference each and every foregoing paragraph, as though set forth in full.

82.     As set forth fully above, Arhaus' Trade Secrets and Confidential Information include, without limitation, Arhaus' business plans and analysis, customer, client and prospect lists, Arhaus store information, customer/client documents and information (including contact information, preferences, margins, order guides, and order histories) internal reports, internal business-related communications, marketing plans and strategies, research and development data, data compilations regarding buying practices, human resources information obtained from a confidential personnel file (such as internal evaluations of the performance, capability and potential of any Employee of Arhaus affiliates), financial reports, operational analysis data, methods, techniques, technical data, know-how, innovations, computer programs, un-patented inventions, and trade secrets; and information about the business affairs of third parties (including, but not limited to, clients and acquisition targets) that such third parties provide to Arhaus in confidence. Per the terms of the Confidentiality Agreement, Confidential Information includes trade secrets, but an item of Confidential Information need not qualify as a trade secret to be protected by this Agreement.  Further, as part of signing the Confidentiality Agreement, Chi agreed that Arhaus' items of Confidential Information are valuable assets and have economic value, actual and potential, because they are not generally known by the public or others who could use them to their own economic benefit and/or to the competitive disadvantage of Arhaus, and thus, should be treated as Arhaus' trade secrets

- 14 -

**COMPLAINT**

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

83.    Arhaus' Trade Secrets pertain to products or services used in, or intended for use in, interstate commerce.

84.    Arhaus' Trade Secrets are of value to Defendants, who are competitors of Arhaus. This is clearly demonstrated by the extent to which Defendant Chi engaged in the gathering, misappropriation, and transfer of such information to Defendant RH.

85.    Arhaus kept its Trade Secrets from disclosure through all appropriate and necessary means, such that it was not generally known or available to individuals or entities outside of Arhaus.

86.    Arhaus' Trade Secrets are critical to the success of its business.

87.    Chi knew that Arhaus' Trade Secrets were not to be disclosed to others.

88.    Defendant RH knew that the information being obtained from Arhaus' business was confidential and in the nature of Trade Secrets, but Defendant RH chose to receive and utilize it.

89.    Defendants misappropriated Arhaus' Trade Secrets by acquiring them through unlawful means, disclosing them and using them to compete against Arhaus, in derogation of Arhaus' interest, and continuing to retain possession of them to this day, all in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*

90.    Chi wrongfully downloaded and/or saved Arhaus' Trade Secrets, which she continued to use during the employ of RH.

91.    Arhaus' Trade Secrets have been transferred to and maintained on Defendants' computers and other devices and remain in the possession of Defendants.

92.    As a direct and proximate cause of Defendants' wrongful conduct, Arhaus has suffered and will continue to suffer financial loss, imminent and irreparable harm, loss of the confidentiality of its trade secrets, loss of good will, loss of business opportunities, and other continuing harm.

93.    The losses and harm to Arhaus are ongoing and cannot be remedied by damages alone.

**COMPLAINT**

4934-9375-4453.3

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

94.     Arhaus has no adequate remedy at law for sufficient compensation for the wrongs committed by Defendants.

95.     As a direct and proximate result of Defendants' misappropriations, Arhaus has suffered and continues to suffer actual damages in an amount to be proven at trial.

96.     As a further direct and proximate result of Defendants' misappropriation, Defendants have been, individually and/or in concert, unjustly enriched in an amount to be proven at trial.

## **EIGHTH CAUSE OF ACTION**

**(Intentional Interference with Prospective Economic Advantage – Against All Defendants)**

97.     Arhaus re-alleges and incorporates by reference each and every foregoing paragraph, as though set forth in full.

98.     For many years, Arhaus has developed and maintained valuable business relationships with its customers, business partners, and vendors.

99.     Arhaus has contracts and business expectancies with its customers, business partners, and vendors.

100.    At the time of Chi's termination, there existed a reasonable probability of continuing and future economic benefit to Arhaus from its customers, business partners, and vendors.

101.    Arhaus is informed and believes and, based thereon, alleges that the Defendants, with knowledge of Arhaus' advantageous contractual relationships with its customers, business partners, and vendors, have wrongfully interfered with the prospective economic relationship between Arhaus and its customers, business partners, and vendors using improper means – i.e., using misappropriated Trade Secrets and Confidential Information –to attempt to disrupt Arhaus' relationships and obtain these customers', business partners', and vendors' business and deprive Arhaus of same.

102.    As a proximate result of the Defendants' conduct, Arhaus has and will continue to suffer damages, including, without limitation, loss of income and the diminution in value of its business, in an amount according to proof, and the Defendants have been unjustly enriched.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

4934-9375-4453.3

103.    In addition, unless enjoined or restrained, the Defendants will continue to interfere with Arhaus' prospective economic advantage related to its relationships with its customers, business partners, and vendors, causing irreparable harm to Arhaus.

104.    The Defendants' conduct as described above was malicious and oppressive and constituted despicable conduct in conscious disregard of Arhaus' rights, and by reason thereof, Arhaus is entitled to punitive damages under California Civil Code § 3294.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Arhaus, LLC prays for judgment against Defendants as follows:

1.    That the Court enter a preliminary and permanent injunction enjoining each of the Defendants from misappropriating Arhaus' Trade Secrets and Confidential Information, and requiring the Defendants to return the trade secrets and other Confidential Information to Arhaus;

2.    That the Court enter a preliminary and permanent injunction requiring Defendant Restoration Hardware to place Defendant Chi in a position at Restoration Hardware in which she cannot utilize Arhaus' Trade Secrets and Confidential Information;

3.    That the Court enter a preliminary and permanent injunction requiring Defendants to confirm via qualified third party auditing that all of Arhaus' trade secrets and confidential information have been removed from Defendants' electronic mail and storage accounts;

4.    That the Court enter a preliminary and permanent injunction enjoining each of the Defendants from unfairly competing with Arhaus and/or using unfair business practices, including, using or disclosing Arhaus' Confidential Information, using or disclosing such information to communicate with Arhaus' customers, or using such information to attempt to divert or take away from Arhaus its existing or prospective customers or the business patronage of such customers;

5.    That the Court enter a preliminary and permanent injunction enjoining Chi from breaching the Confidentiality Agreement;

6.    That Arhaus be awarded damages in an amount to be proven at trial, plus interest thereon at the legal rate until paid in full;

7.    That Arhaus be awarded its costs incurred herein and its reasonable attorney's fees, pursuant to the Confidentiality Agreement;

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -
**COMPLAINT**

8.      That Arhaus be awarded all relief provided for under California Civil Code § 3426, under California Business & Professions Code § 17200, and under California Labor Code §2860.

9.      That Arhaus be awarded actual damages and injunctive relief under the Defend Trade Secrets Act, 18 U.S.C. § 1836;

10.     That Arhaus be awarded punitive damages under California Civil Code § 3294.

11.     That the Court grant such other and further relief as the Court deems just and proper.


Dated:    July 24, 2025                          Respectfully submitted,
                                                 BAKER & HOSTETLER LLP


                                                 By:    /s/ Sabrina L. Shadi
                                                        Sabrina L. Shadi

                                                 Attorneys for Plaintiff
                                                 ARHAUS, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**COMPLAINT**

4934-9375-4453.3

Exhibit A

## Confidentiality Agreement

This Confidentiality Agreement ("**Agreement**") is between you ("Employee") and Arhaus, LLC, dba Arhaus Furniture ("Company"), collectively referred to as the "**parties.**"

WHEREAS, Employee is or will be employed in a position of special trust and confidence with Company or an affiliate of Company (collectively referred to herein as "**Company**"), and as a condition of acceptance of the benefits described in Section 1.1 below, the parties seek to protect Company's Confidential Information (as defined below), inventions and discoveries, specialized training, and its business relationships and other goodwill; the parties agree as follows:

## SECTION 1.  Benefits and Responsibilities of Employment.

**1.1** **Position of Trust.** By entering into this Agreement and accepting the equity award provided by Company, Employee agrees and acknowledges that Company has granted the equity award(s) to Employee to secure Employee's commitment to advance and promote the business interests and objectives of Company. Employee further agrees and acknowledges that, in Employee's role as a key member of the executive and/or management team of Company or an affiliate of Company, Employee has been entrusted with, and will continue to be entrusted with, Company's Confidential Information, goodwill of customers, clients, and vendors, and business relationships.

**1.2** **Duty of Loyalty and Conflicts of Interest.** During employment, Employee will dedicate all of Employee's working time to Company and use best efforts to perform the duties assigned, remain loyal, comply with Company policies and procedures, and avoid conflicts of interest. It shall be considered a conflict of interest for Employee to knowingly assist or take steps to form or further a competing business enterprise while employed with Company. Employee will promptly inform Company of any business opportunities related to Company's lines of business that Employee becomes aware of during employment, and any such opportunities shall be considered the intellectual property of Company whether pursued by Company or not. Nothing in this Agreement shall eliminate, reduce, or otherwise remove any legal duties or obligations that Employee would otherwise have to Company through common law or statute.

## SECTION 2.     Confidentiality and Business Interests.

**2.1** **Definition of Confidential Information**. "**Confidential Information**" refers to an item of information, or a compilation of information, in any form (tangible or intangible), related to Company's business that Company has not made public or authorized public disclosure of, and that is not generally known to the public or to other persons who might obtain value or competitive advantage

from its disclosure or use. Confidential Information will not lose its protected status under this Agreement if it becomes generally known to the public or to other persons through improper means such as the unauthorized use or disclosure of the information by Employee or another person. Confidential Information includes, but is not limited to: (a) Company's business plans and analysis, customer, client and prospect lists, Company store information, customer/client documents and information (including contact information, preferences, margins, order guides, and order histories) internal reports, internal business-related communications, marketing plans and strategies, research and development data, data compilations regarding buying practices, human resources information obtained from a confidential personnel file  (such as internal evaluations of the performance, capability and potential of any Employee of Company affiliates), financial reports, operational analysis data, methods, techniques, technical data, know-how, innovations, computer programs, un-patented inventions, and trade secrets; and (b) information about the business affairs of third parties (including, but not limited to, clients and acquisition targets) that such third parties provide to Company in confidence.  Confidential Information will include trade secrets, but an item of Confidential Information need not qualify as a trade secret to be protected by this Agreement.  Company's confidential exchange of information with a third party for business purposes will not remove it from protection under this Agreement. Employee acknowledges that items of Confidential Information are Company's valuable assets and have economic value, actual or potential, because they are not generally known by the public or others who could use them to their own economic benefit and/or to the competitive disadvantage of Company, and thus, should be treated as Company's trade secrets. Confidential Information does not include information lawfully acquired by a non-management employee about wages, hours or other terms and conditions of non-management employees if used by them for purposes protected by Section 7 of the National Labor Relations Act (the NLRA) such as joining or forming a union, engaging in collective bargaining, or engaging in other concerted activity for their mutual aid or protection.

    **2.2**   <u>**Unauthorized Use or Disclosure**</u>. Employee agrees to not engage in any unauthorized use or disclosure of Confidential Information (as defined above), or knowingly use Confidential Information to harm or compromise the interests of Company.  The foregoing restriction will apply throughout Employee's employment and thereafter for so long as the information at issue continues to qualify as a trade secret or Confidential Information as defined above. Employee understands this means Employee may not use or disclose Confidential Information in any manner that is not within the course and scope of employment with Company and undertaken for the benefit of Company. If compelled to disclose information via court order, subpoena, or other legal mandate, Employee will give Company as much written notice as possible under the circumstances, will refrain from use or disclosure for as long as the law allows, and will cooperate with Company to protect such information, including taking every reasonable step to protect against unnecessary disclosure. However, nothing in this Agreement, including the foregoing, prevents Employee

from communicating with the EEOC, the SEC, the DOL, or any other governmental authority, making a report in good faith and with a reasonable belief of any violations of law or regulation to a governmental authority, or cooperating with or participating in a legal proceeding relating to such violations. Employee is also strictly prohibited from using any prior employer's confidential information, documents, or materials in Employee's position at Company. Just as the Company take measures to protect Confidential Information, the Company respects prior employer's similar right and prohibits use of any of prior employer confidential information in performing Employee's work for Company.   If Company determines that Employee has possession of, or is using a previous employer's confidential information, Employee may be subject to discipline up to, and including, termination of employment.

    **2.3**   **Employee Recordkeeping, Computer Use, and Mobile Devices**. (a) Employee agrees to use the authorizations, Confidential Information, and other benefits of Employee's employment to further the business interests of Company. Employee agrees to preserve and not destroy records on current and prospective Company customers, clients, suppliers, and other business relationships that Employee develops or helps to develop, and not use these records in any way, directly or indirectly, to harm Company's business.  When Employee's employment with Company terminates, or earlier if so requested, Employee will return to Company all documents, records, and materials of any kind in Employee's possession or under Employee's control, incorporating Confidential Information or otherwise, relating to Company's business,  and any copies thereof (electronic or otherwise), other than documents regarding Employee's individual compensation, such as pay stubs and benefit plan booklets. Employee agrees that the obligation to return property extends to all information and property, not just Confidential Information.  (b) Employee agrees not to use Company's computers, servers, email systems, or other electronic communication or storage devices for personal gain, or to otherwise knowingly compromise a business interest of Company; any activity in violation of this provision shall be considered unauthorized use harmful to Company's business systems. (c) If Employee stores any Company information with a third-party service provider (such as Yahoo, Google Docs, DropBox  or iCloud), Employee consents to the service provider's disclosure of such information to Company.  Where allowed by law, Employee will execute any additional authorizations required by the service provider to disclose Company's information to Company.

    **2.4**   **Protected Activities.** The obligations in Section 2 are intended to maintain the confidentiality of Company's trade secrets and private and confidential information, to prevent the use of Company records to assist a Competitor (defined below), and to prohibit unauthorized access to and use of Company computers. Nothing in this Section 2, or in this Agreement generally, is intended to, or shall be construed to prohibit any use or disclosure of information that is protected by law, to prohibit a disclosure compelled by law, to prohibit lawful testimony, to interfere with law enforcement by a duly authorized law enforcement agency, or to prohibit the reporting  of an illegal act to any duly authorized law enforcement agency.  Nothing

herein shall be construed to prohibit a non-managerial Employee covered by the National Labor Relations Act (the "Act") from exercising Employee's rights under Section 7 of the Act, by for example, communicating with fellow Employees or union representatives about Terms and Conditions Information. "Terms and Conditions Information" refers to information concerning the wages, hours and terms and conditions of employment, or similar matters that are the subject of a labor dispute covered by the Act.

**2.5**    **Survival of Restrictions.** (a) The Agreement's obligations will survive the termination of Employee's employment with Company, regardless of the cause of the termination, and shall, likewise, continue to apply and be valid notwithstanding any change in Employee's duties, compensation, responsibilities, position or title and/or the assignment of this Agreement by Company to any successor in interest or other assignee. (b) If a court finds any of the Agreement's restrictions unenforceable as written, it is the intention of the parties that the Court revise or reduce the restriction (for the jurisdiction covered by that court only) so as to make it enforceable to protect Company's interests to the maximum extent legally allowed within that jurisdiction. (e) If Employee becomes employed with or provides services or assistance to a parent or affiliate entity of Company, the parent or affiliate will be construed to be included within the definition of Company and will have the same rights of enforcement and protection as Company.

**SECTION 3.** **Special Remedies**. If Employee breaches or threatens to breach any of the restrictions or related obligations in this Agreement, Company may recover: (i) an order of specific performance or declaratory relief; (ii) injunctive relief by temporary restraining order, temporary injunction, and/or permanent injunction; (iii) damages; (iv) attorney's fees and costs incurred in obtaining relief; and (v) any other legal or equitable relief or remedy allowed by law. The parties agree that One Thousand Dollars ($1,000.00) shall be a reasonable amount of the bond to be posted if an injunction is sought by Company to enforce this Agreement and a bond is required.

**SECTION 4.** **Severability, Waiver, Modification, Assignment, Governing Law.** (a) It is the intention of the parties that if any provision of the Agreement is determined by a court of competent jurisdiction to be void, illegal or unenforceable, in whole or in part, notwithstanding the power to modify this Agreement under Section 2.5(b), all other provisions will remain in full force and effect, as if the void, illegal, or unenforceable provision is not part of the Agreement. (b) If either party waives his, her, or its right to pursue a claim for the other's breach of any provision of the Agreement, the waiver will not extinguish that party's right to pursue a claim for a subsequent breach. (c) Except where otherwise expressly indicated, the Agreement contains the parties' entire agreement concerning the matters covered in it. The Agreement may not be waived, modified, altered or amended except by written agreement of all parties or by court order. (d) The Agreement will automatically inure to the benefit of Company's successors, assigns, and merged entities, as well as

4

Company's affiliates, subsidiaries, and parent(s); and, this Agreement may be enforced by any one or more of the foregoing, without need of any further authorization or agreement from Employee. (e) Employee consents to and agrees to the personal jurisdiction of the Courts located in California, over Employee, and waives Employee's right to object to the contrary, including Employee's right to plead or claim that any litigation brought in an California court has been brought in an inconvenient forum. (f) The laws of California will govern the Agreement, the construction of its terms, and the interpretation of the rights and duties of the parties, regardless of any conflicts of law principles of any state that may be to the contrary.

**SECTION 5**. **Jury Trial Waiver**. The parties hereby waive their right to jury trial on any legal dispute arising from or relating to this Agreement.

**SECTION 6.** **Resolution for Incumbent Employee.** This section applies only if Employee is already a current employee of Company at the time this Agreement is made.

**6.1** **Settlement Purpose.** Employee has received Confidential Information, specialized training and/or business goodwill with customers through paid employment with Company with the understanding that this was for the benefit of Company. Due to the position of trust and confidence held by Employee some post-employment activities would by their nature deprive Company of the benefit of its Confidential Information and other investments in Employee and cause irreparable harm which justifies post- employment restrictions. However, the nature and scope of the post-employment restrictions that are reasonable and necessary to balance the parties' interests is an unresolved matter between the parties. Accordingly, an important purpose of this Agreement is to fully settle and resolve such uncertainties and provide a set of predictable boundaries upon which the parties may rely to avoid future disputes. Thus, this Agreement will be enforced subject to public policies favoring settlement or resolution agreements.

Nothing in this Agreement will be construed to create a contract of employment for a definite period of time or to prohibit either party from having the freedom to end the employment relationship at-will, with or without cause.

AGREED to and effective as of the date of Employee's acceptance.

**Lisa Chi - 603144 - Arhaus, LLC**

# Arhaus Confidentiality Agreement-CA

Document               Arhaus Confidentiality Agreement-CA

Category                Stock

Message              Please download and read the document contained in the link above.  Once you have reviewed, then please complete the acknowledgment below to confirm your acceptance of the agreement by November 25, 2022.  If you have any questions, please contact humanresources@arhaus.com.

| Status | Status Date | Comments |
|---|---|---|
| Accepted | 11/16/2022 3:07 PM | |