| | |
|---|---|
| 1 | ILLOVSKY GATES & CALIA LLP |
| | Eugene Illovsky (State Bar No. 117892) |
| 2 | eugene@illovskygates.com |
| | Kevin Calia (State Bar No. 227406) |
| 3 | kevin@illovskygates.com |
| 4 | Christopher Hales (State Bar No. 233349) |
| | chris@illovskygates.com |
| 5 | 1611 Telegraph Ave., Ste. 806 |
| | Oakland, CA 94612 |
| 6 | Telephone: (415) 500-6640 |
| 7 | |
| | Attorneys for Defendant |
| 8 | Lisa Chi |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ARHAUS, LLC, a Delaware limited liability company, | Case No.: 3:25-cv-06233-JD |
| Plaintiff, | **DEFENDANT LISA CHI'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FRCP RULE 12(b)(6)** |
| v. | |
| LISA CHI, an individual | |
| Defendant. | Date: December 4, 2025 |
| | Time: 10:00 a.m. |
| | Place: Courtroom 11 |
| | Judge: Hon. James Donato |
| | Action Filed: July 24, 2025 |

# NOTICE OF MOTION

**TO THE HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 4, 2025 at 10:00 A.M., or as soon thereafter as the matter may be heard in Courtroom 11 of the above-entitled Court, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, California, Defendant Lisa Chi will and hereby does move this Court for an order dismissing the First Amended Complaint filed by Plaintiff Arhaus, LLC for failure to state a claim pursuant to Federal Rule of Civil Procedure Rules 12(b)(6) (the "Motion").

This Motion is brought on the grounds that the First Amended Complaint does not allege facts sufficient to state a claim against Ms. Chi for Misappropriation of Trade Secrets under the California Uniform Trade Secrets Act, California Civil Code § 3426 et Seq. ("CUTSA") (first cause of action), Breach of Confidentiality Agreement under California law (second cause of action), Unfair Business Practices under California Business and Professions Code § 17200 et seq. (third cause of action), Common Law Unfair Competition under California law (fourth cause of action), California Labor Code § 2860 (fifth cause of action), and the federal Defend Trade Secrets Act, 18 U.S.C. 1836 et seq. ("DTSA") (sixth cause of action).

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, all pleadings and files in this matter, and such further oral or documentary evidence as may be presented to the Court at, or prior to, the hearing on this Motion.

Dated: October 24, 2025

ILLOVSKY GATES & CALIA LLP
EUGENE ILLOVSKY
KEVIN CALIA
CHRISTOPHER HALES

By: /s/Kevin Calia
     Kevin Calia

*Attorneys for Defendant Lisa Chi*

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................................1

II. FACTUAL BACKGROUND ..................................................................................................1

    A. The Parties ........................................................................................................................2

    B. The alleged trade secrets ...................................................................................................3

    C. The alleged breach of the confidentiality agreement ........................................................4

III. LEGAL ARGUMENT ............................................................................................................5

    A. The court should dismiss the federal and state trade secret claims because they fail to allege a trade secret or a misappropriation. ..................................................................5

        1. Arhaus does not adequately allege ownership of a trade secret. ........................................5

        2. Arhaus's allegations do not show "misappropriation" of a "trade secret. ........................6

    B. If the court dismisses the federal trade secret claim, it may decline to exercise supplemental jurisdiction over the remaining state law claims. .......................................8

    C. The breach of confidentiality claim under state law should be dismissed because Arhaus's allegations show there was no "unauthorized" disclosure. .................................9

        1. The 2022 Confidentiality Agreement authorized use of personal accounts .....................9

        2. The 2022 Confidentiality Agreement is overly broad and thus void……………….……10

    D. The California Unfair Business Practices claim under § 17200 should be dismissed because it is preempted by CUTSA. ................................................................................11

    E. The California common law unfair competition claim should be dismissed because Arhaus does not allege that Ms. Chi engaged in "passing off." ............................11

    F. The California Labor Code claim should be dismissed because § 2860 does not provide a cause of action, and is preempted by CUTSA. ...................................................13

IV. CONCLUSION .....................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Acri v. Varian Associates, Inc.*,
  114 F.3d 999 (9th Cir. 1997) ............................................................................................. 9

*AMN Healthcare, Inc. v. AYA Healthcare Services*,
  28 Cal. App. 5th 923 (2018) ............................................................................................ 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................................... 5

*Bakemark USA, LLC v. Navarro*,
  2023 WL 3317001 (C.D. Cal., Apr. 28, 2023) ............................................................... 12

*Bank of the W. v. Superior Court*,
  2 Cal. 4th 1254 (1992) .................................................................................................... 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................... 5, 8

*Brown v. TGS Management Co., LLC*,
  57 Cal. App. 5th 303 (2020) ........................................................................................... 10

*Carnegie-Mellon University v. Cohill*,
  484 U.S. 343 (1988) .......................................................................................................... 9

*Cisco Sys., Inc. v. Chung*,
  462 F. Supp. 3d 1024 (N.D. Cal. 2020) ........................................................................... 5

*Digital Envoy, Inc. v. Google, Inc.*,
  370 F. Supp. 2d 1025 (N.D. Cal. 2005) .......................................................................... 12

*Hollingsworth Solderless Terminal Co. v. Turley*,
  622 F.2d 1324 (9th Cir. 1980) .......................................................................................... 6

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
  171 Cal. App. 4th 939 (2009) ......................................................................................... 13

*Multifab, Inc. v. Zweigler*,
  2020 WL 2614736 (W.D. Wash., May 22, 2020) ........................................................... 8

*Newgen, LLC v. Safe Cig, LLC*,
  840 F.3d 606 (9th Cir. 2016) ............................................................................................ 8

*Noe v. Superior Court*,
  237 Cal. App. 4th 316 (2015) ......................................................................................... 13

*Panjiva, Inc. v. United States Customs and Border Protection,*
   975 F.3d 171 (2d Cir. 2020) ................................................................................................7

*Penthol, LLC v. Vertex Energy Operating, LLC,*
   722 F. Supp. 3d 660 (S.D. Tex. 2024) .................................................................................7

*Penthol, LLC. v. Vertex Energy Operating, LLC,*
   149 F.4th 504 (5th Cir. 2025) ..............................................................................................7

*Perrin Bernard Supowitz, LLC v. Morales,*
   2023 WL 1415572 (C.D. Cal 2023) ....................................................................................5

*PrimeSource Building Products, Inc. v. Huttig Building Products,*
   2017 WL 7795125 (N.D. Ill. 2017) .....................................................................................7

*Quintessential, LLC v. Quintessential Brands S.A.,*
   2022 WL 357502 (N.D. Cal. 2022) ...................................................................................12

*Rescue 1 Financial, LLC v. Complete Debt Relief, LLC,*
   2023 WL 6373884 (C.D. Cal. 2023) .................................................................................11

*Rider Clothing LLC v. BoardRiders, Inc.*,
   2019 WL 8163813 (C.D. Cal., Nov. 26, 2019) .................................................................12

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ...........................................................................................12

*SunPower Corp. v. Solar City Corp.*,
   2012 WL 6160472 (N.D. Cal. 2012) .................................................................................11

*Swartz v. Coca-Cola Co.*,
   2023 WL 4828680 (N.D. Cal. July 27, 2023) ............................................................5, 7, 8

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ...........................................................................................12

*Waymo LLC v. Uber Techs, Inc.*,
   256 F. Supp. 3d 1059 (N.D. Cal. 2017) .............................................................................11

*Zoom Imaging Solutions, Inc. v. Roe*,
   2019 U.S. Dist. LEXIS 195374 (E.D. Cal. 2019) .............................................................14

**Statutes**

18 U.S.C. § 1839 ...........................................................................................................................5, 6

19 U.S.C. § 1431 ........................................................................................................................1, 7, 8

28 U.S.C. § 1367 ..............................................................................................................................8

Cal. Bus. & Prof. Code § 16600 ...................................................................................................10, 11
Cal. Civ. Code § 3426.1 ..............................................................................................................................6
Cal. Lab. Code § 2860 ...............................................................................................................................13
Cal. Lab. Code § 1194 ...............................................................................................................................13
Cal. Lab. Code § 226 .................................................................................................................................13

## I. INTRODUCTION

Plaintiff Arhaus's trade secrets claims should be dismissed because Arhaus has failed to allege facts to show that it took reasonable measures to prevent the allegedly secret identities of its vendors from being made public. Since 1930, federal statutes dictate that the identities of companies shipping goods into the United States and the consignees receiving them, as well as the general character of the cargo and country of origin, are presumptively public. 19 U.S.C. § 1431(a), (b), and (c)(1). Arhaus nowhere alleges that it took the optional steps permitted by statute to maintain the secrecy of its "global network of specialty vendors" or to prevent these shipping records from becoming public as they ordinarily do. Arhaus's claims against Ms. Chi under the federal ("DTSA") and state ("CUTSA") trade secret statutes should therefore be dismissed.

Because the inadequately pled federal trade secret claim is the only federal claim and Arhaus has failed to allege diversity jurisdiction, the Court may, and should, decline to exercise supplemental jurisdiction over the remaining state law claims.

If the Court considers the other state law claims, each should be dismissed. Arhaus has not adequately pled that Ms. Chi breached her confidentiality agreement, and the agreement is so broad that it is void as a de facto non-compete—unenforceable under California law. The unfair competition and labor code claims are based on the same nucleus of facts as the trade secret claims and therefore should be dismissed because they are superseded or preempted by CUTSA. The Court should thus grant Ms. Chi's motion and dismiss the First Amended Complaint.

## II. FACTUAL BACKGROUND

On July 24, 2025, Arhaus, LLC ("Arhaus") filed a complaint naming "Restoration Hardware, Inc. d/b/a RH" and Lisa Chi as defendants. (ECF 1.) On October 10, Arhaus filed the First Amended Complaint ("FAC" or "Complaint"), dropping RH as a defendant and naming only Ms. Chi. (ECF 23.) Arhaus alleges in the FAC that Ms. Chi misappropriated Arhaus's "confidential information and trade secrets" that she learned while employed by Arhaus. (FAC ¶ 1.)

The Complaint asserts that broad categories of information are "trade secrets" or "Confidential Information," including by asserting that an undefined "global network of specialty vendors is a highly confidential Arhaus trade secret." (FAC ¶¶ 13, 31, 35, 54-61.) The Complaint

does not contain any facts regarding any alleged use or disclosure of any of the "trade secrets" or "Confidential Information" after Ms. Chi left Arhaus, with the exception of three specific vendors: a Vietnamese stone vendor, a Romanian vendor, and a Parisian antiques consultant. (FAC ¶¶ 54-61.) Arhaus claims that the "identities" of these vendors or consultants are "known by only a handful of employees within Arhaus itself" and "are unknown to the broader home furnishings industry." (FAC ¶¶ 10-14.) Arhaus thus claims the identities of these vendors or consultants are its "Trade Secrets and Confidential Information," which "Arhaus employees contractually agree to hold in the strictest confidence." (FAC ¶ 11.)

### A.   The Parties

Plaintiff Arhaus designs and sells "upscale home furnishings through its retail stores and catalogs." (FAC ¶ 8.) It buys goods and services from various "specialty vendors—suppliers, buyers, and consultants—who inform Arhaus' unique aesthetic and provide high-quality goods at prices that allow Arhaus to compete effectively against competitors." (FAC ¶ 12.)

Ms. Chi is "President [and] Co-Chief Merchandising & Creative Officer" for RH, "where she is responsible for co-leading Product Development, Merchandising, Inventory Planning, Sourcing, Manufacturing, and Marketing." (FAC, ¶ 49.) Before May 16, 2025, she worked at Arhaus, first as a consultant and then, from July 2021 until May 2025, as its Chief Merchandising Officer. (FAC ¶¶ 18, 19.) In that role Ms. Chi "provided strategy leadership across many of Arhaus' departments" and was involved in "oversight of Arhaus' vendor relationships." (FAC ¶ 20.) On May 16, 2025, Ms. Chi "turn[ed] in her notice" and "shortly thereafter" went to work for RH, which "increased her annual salary" and gave her "guaranteed increases and additional benefits." (FAC ¶¶ 49-51.)

While working for Arhaus, Ms. Chi signed a 2021 Consulting Agreement with a confidentiality provision and then a 2021 Confidentiality Agreement "which confirms that information gained concerning 'vendors and/or contacts, sources of merchandise' is confidential and not to be divulged, including following her employment," and then later a 2022 Confidentiality Agreement in which she "agreed that the categories of information identified as Arhaus' Confidential Information . . . should be treated as Arhaus' trade secrets." (FAC ¶¶ 21-22, 26-27.) The agreement to avoid "any unauthorized use or disclosure of Arhaus' Confidential Information" is alleged to be "a

continuing contractual obligation that survived beyond termination of employment with Arhaus." (FAC ¶ 26; *see also* FAC Ex. E ("Survival of Restrictions").)

### B.     The alleged trade secrets

Arhaus alleges that Ms. Chi violated state and federal trade secrets statutes by contacting certain "specialty suppliers and consultants on behalf of RH." (FAC ¶ 53.) According to Arhaus, its "network of specialty vendors is a highly confidential Arhaus trade secret." (FAC ¶ 13.) Allegedly, "[m]any of the vendors stem from personal relationships cultivated by Arhaus' founder and CEO" and their "identities are known by only a handful of employees within Arhaus itself and they are unknown to the broader home furnishings industry." (FAC ¶ 14.) Arhaus refers only to the following three specific vendors or consultants in its Complaint whose identities it claims are secret and were misappropriated.

- **Vietnamese Stone vendor**. Arhaus alleges it learned that Ms. Chi "reached out to a small Vietnamese stone vendor on behalf of RH" who "provides Arhaus the best pricing" and "all or most of [whose] output is designated for Arhaus." (FAC ¶ 54.) Arhaus claims the "identity of this vendor and Arhaus' relationship with it are closely guarded secrets." (FAC ¶ 56.) Arhaus also alleges that "[b]ecause the company is at full capacity serving Arhaus' needs, it turned RH away." (FAC ¶ 55.)
- **Small Romanian vendor**. Arhaus alleges that, "in early September," Ms. Chi "and/or one of her associates at RH reached out to a small Romanian vendor who has become one of Arhaus' most important vendors over the past six years." (FAC ¶ 60.) The Complaint alleges that this vendor's identity was known to "[v]ery few Arhaus employees" and that "[n]either Chi nor RH would have known" of it "due to its size and obscurity." (FAC ¶ 61.) Arhaus says Ms. Chi "learned of it because of her role as CMO at Arhaus." (*Id.*)
- **Parisian Antiques dealer**. Arhaus alleges it learned in "early September" that Ms. Chi "visited the Puces de Saint-Ouen, the largest antique market in the world." (FAC ¶ 57.) At this market, "[b]uried within the warren of market stalls is an antiques dealer who has become a key Arhaus consultant" who travels "with Arhaus to introduce the company to hard-to-find, out-of-the-way places in France and Belgium for design inspiration and one-of-a-kind product buys." (*Id.*) The Complaint asserts that the "identity of this dealer and

Arhaus' relationship with this dealer are known by very few Arhaus employees" and that he "only performs this service for Arhaus based on his personal relationship with [Arhaus CEO] Reed." (FAC ¶ 58.) Arhaus alleges that Ms. Chi violated trade secret laws when she "attempted to meet with the dealer." (FAC ¶ 59.)

### C. The alleged breach of the confidentiality agreement

Arhaus alleges that Ms. Chi breached the 2022 Confidentiality Agreement. (FAC ¶¶ 81-87.) Arhaus focuses on Section 2.2 which prohibits Arhaus employees from "unauthorized use or disclosure of Confidential Information" as defined in the agreement. (FAC ¶ 29.) The obligation applies during and after Ms. Chi's employment by Arhaus "for as long as such information qualifies as Trade Secret information or Confidential Information." (FAC ¶ 35.)

Arhaus alleges Ms. Chi had a "regular practice" of having other Arhaus employees send certain emails at both her corporate email address and her personal email address while she was employed by Arhaus. (FAC ¶ 32.) To show this "regular practice," Arhaus alleges three "examples" of emails with attachments forwarded or sent to Ms. Chi's personal email address or the "Google Docs" associated with her personal email account, one from February 26, 2025, one from April 10, 2025, and one from April 29, 2025. (FAC ¶¶ 31-35.) One was allegedly sent by an Arhaus employee simultaneously to Ms. Chi's work and personal email in February that attached a "draft of the Fall 2025 Arhaus Catalog," which is alleged to be "among the most closely-guarded trade secrets and pieces of Confidential Information at Arhaus." (FAC ¶ 32.) Another email from April 2025 apparently about a vendor, entitled "Bellina March Reorders," with attachments, was "sent to her Arhaus email address and her personal email address." (FAC ¶ 33.) And for the third email from April 2025, Arhaus alleged that "Chi forwarded an email titled 'China Sourcing %' from her Arhaus email account to her personal email address." (FAC ¶ 34.) Arhaus makes no allegations that Ms. Chi used or disclosed information related to these emails outside of performing her job for Arhaus, instead confining any such allegations of misappropriation to the alleged contacts or attempts to contact the three supposedly secret vendors or consultants. (*Compare* FAC ¶¶ 31-41 *with* FAC ¶¶ 53-66.)

## III. LEGAL ARGUMENT

Arhaus cannot survive a Rule 12(b)(6) motion to dismiss unless it has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court's "plausibility analysis is 'context-specific' and not only invites but 'requires the reviewing court to draw on its judicial experience and common sense.'" *See Swartz v. Coca-Cola Co.*, 2023 WL 4828680, at *1 (N.D. Cal. July 27, 2023) (quoting *Iqbal*, 556 U.S. at 679).

### A. The court should dismiss the federal and state trade secret claims because they fail to allege a trade secret or a misappropriation.

Arhaus fails to allege facts to plausibly show that Ms. Chi violated federal or state trade secrets statutes. Courts "typically analyze federal and California trade secret misappropriation claims together because the elements are 'substantially similar.'" *Perrin Bernard Supowitz, LLC v. Morales*, 2023 WL 1415572, at *4 (C.D. Cal 2023) (citing cases). Those basic elements are "that: (1) [Arhaus] owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Cisco Sys., Inc. v. Chung,* 462 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020) (quotation omitted). Arhaus has failed to allege sufficient facts to meet the first two elements.

#### 1. Arhaus does not adequately allege ownership of a trade secret.

To start, Arhaus does not allege it "owned" a "global network of specialty vendors" or the names of its supposedly secret vendors. (FAC ¶ 13.) An "owner" is one who has "legal or equitable title to" the information that is allegedly secret. 18 U.S.C. § 1839(4). Arhaus does not allege anything, such as a vendor list, in which it could claim some property interest. Thus, the mere names or identities of vendors cannot be a trade secret. In *Perrin Bernard Supowitz LLC*, the plaintiff seller of food service products sued former employees for stealing its vendors, which it claimed were trade secrets. 2023 WL 1415572, at *11. The court held "the mere names of [plaintiff's] vendors do not constitute a trade secret." *Id.* It required the plaintiff to "point to a vendor list" or compilation "that has value beyond the mere identity of the vendors" at a minimum. *Id.* at *12. Here, Arhaus has not

alleged any compilation or physical or electronic vendor list or database and Arhaus cannot plausibly claim to own the actual vendors or their mere names and identities.

### 2. Arhaus's allegations do not show "misappropriation" of a "trade secret."

Arhaus has failed to allege facts that plausibly show Ms. Chi "misappropriated" a "trade secret" by using or disclosing information that was not readily accessible to a reasonably diligent competitor. Arhaus also fails to allege facts to show that it took reasonable measures to prevent the identities of its vendors from being publicly revealed in shipping documents required by federal statute.

A "misappropriation' is a "disclosure or use of a trade secret of another without . . . consent." 18 U.S.C. § 1839(5)(B). The only allegations in the FAC about alleged use or disclosure are the alleged contacts, or attempts to contact, three allegedly secret vendors or consultants. (FAC ¶¶ 53-66 (section titled "Chi's Misappropriation of Arhaus' Trade Secrets and Confidential Information").) There are no allegations of use or disclosure for any of the other "examples" of Ms. Chi's "regular practice" of accessing Arhaus materials via her personal email address of cloud-based accounts while performing her job duties for Arhaus. (*Compare* FAC ¶¶ 31-41 *with* FAC ¶¶ 53-66.)

As to the vendors' identities, Arhaus also fails to plead facts to plausibly show that Arhaus has taken reasonable measures to keep this information secret. *See* 18 U.S.C. § 1839(3) (providing trade secret protection only where owner "has taken reasonable measures to keep such information secret"); Cal. Civ. Code § 3426.1(d) (requiring "efforts that are reasonable under the circumstances to maintain its secrecy"). To be protected as trade secrets, information must derive "independent economic value, actual or potential, from not being generally known to and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3); *see also* Cal. Civ. Code § 3426.1(d). In other words, trade secrets derive their value from being secret. If the information is not secret, it cannot be a "trade secret." 18 U.S.C. § 1839(3); *see also* Cal. Civ. Code § 3426.1(d).

To meet this requirement, the FAC needed to allege facts to plausibly show that the identities of Arhaus's vendors would not be "readily accessible to a reasonably diligent competitor." *See Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1332 (9th Cir. 1980). Arhaus

alleges the conclusion that the Vietnamese and Romanian vendors and the Parisian consultant are part of a secret and "carefully cultivated international network of small specialty vendors" (FAC ¶ 63), but not the facts to support it. *See Swartz*, 2023 WL 4828680, at *3 ("The problem for plaintiffs is that the FAC does not provide facts supporting these allegations").

The problem for Arhaus is that its overseas vendor network was required to be disclosed in federally mandated import documents that are presumptively public. Since the Smoot-Hawley Tariff Act of 1930, federal statutes dictate that the identities of companies shipping goods into the United States and the consignees receiving them—as well as the general character of the cargo and country of origin—are presumptively public. 19 U.S.C. § 1431(a), (b), and (c)(1). Foreign vendors who ship goods into the United States must provide information about themselves, the cargo that is shipped, and the party receiving the shipments. 19 U.S.C. § 1431(a) ("every vessel" entering the U.S. with goods "shall have a manifest that complies with the requirements prescribed" under the statute). The manifest, which may be supplemented by a bill of lading, must include the "name and address of each importer and consignee," the "general character of the cargo," the shipment's "country of origin," and other information. 19 U.S.C. §§ 1431(b), (c)(1)(A)-(H); *see also Panjiva, Inc. v. United States Customs and Border Protection,* 975 F.3d 171, 175 (2d Cir. 2020). The law requires that this manifest information "shall be available for public disclosure." 19 U.S.C. § 1431(c)(1).

As cases explain, websites such as Panjiva, ImportGenius, or ImportYeti are in the business of aggregating and analyzing data, "including customs data," from these required import records and making it available to "the global trade community." *Panjiva, Inc.*, 975 F.3d at 175. Such information is readily ascertainable to competitors through these services and thus cannot be protected as a trade secret. *See*, *e.g.*, *PrimeSource Building Products, Inc. v. Huttig Building Products,* 2017 WL 7795125, at *13 (N.D. Ill. 2017) (PrimeSource's supplier lists were not trade secrets because "the identity of [its] suppliers is publicly available through customs reports and industry resources known as Panjiva and Import Genius"); *Penthol, LLC v. Vertex Energy Operating, LLC,* 722 F. Supp. 3d 660, 677 (S.D. Tex. 2024), *amended*, 2024 WL 3166936 (S.D. Tex. June 25, 2024), *and aff'd in part, vacated in part, remanded sub nom. Penthol, LLC. v. Vertex Energy Operating, LLC*, 149 F.4th 504 (5th Cir. 2025) (information "readily ascertainable" on "publicly available platforms like

ImportGenius" is not a protectable trade secret). And once a vendor's identity is generally known, other information about that vendor becomes "readily ascertainable by proper means" such as contacting the vendor to ask about its capabilities or prices. *Multifab, Inc. v. Zweigler*, 2020 WL 2614736, at *5 (W.D. Wash., May 22, 2020).

In this context, the plausibility standard required Arhaus to plead facts to show that it took reasonable measures to shield the identities of its international vendors from the ordinary process of public disclosure that federal statutes mandate. *Swartz*, 2023 WL 4828680, at *1 (plausibility standard is "context-specific"). Otherwise, its entire overseas vendor network would be available to competitors from these public shipping documents. Arhaus particularly needed to allege facts to address this issue because federal law gives importers like Arhaus an option to try to shield some of their vendor information from public disclosure by making "a biennial certification, in accordance with procedures adopted by the Secretary of the Treasury, claiming confidential treatment of such information." 19 U.S.C. § 1431(c)(1)(A). The FAC fails to allege that Arhaus filed any such certification or that Arhaus took any other measures to protect information that would otherwise become public under federal law. If Arhaus failed to protect its vendors' identities from becoming public, those identities *cannot* be trade secrets. Arhaus cannot nudge its claims across the line from conceivable to plausible by simply ignoring the issue in its FAC. *Twombly*, 550 U.S. at 570. The Court should dismiss the trade secrets claims and require Arhaus to allege what reasonable measures it took to prevent its vendors' identities from becoming public.

**B.    If the court dismisses the federal trade secret claim, it may decline to exercise supplemental jurisdiction over the remaining state law claims.**

If the Court dismisses the federal trade secret claim—the only federal claim—it may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). Arhaus alleges federal question jurisdiction and supplemental jurisdiction (FAC ¶ 5); it does not invoke diversity jurisdiction or include the allegations regarding citizenship that would be required to do so.[1]

---

[1] "A limited liability company 'is a citizen of every state of which its owners/members are citizens,' not the state in which it was formed or does business." *Newgen, LLC v. Safe Cig, LLC*, 840 F.3d 606,

In the "usual case" where all federal claims "are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Given the early stage of these proceedings, if the sole federal claim is dismissed, this will be the usual case where considerations of economy, convenience, fairness, and comity do not warrant this Court investing its time in addressing the merits of the state law claims. If the Court exercises its discretion to consider the state law claims, those state law claims should be dismissed for the reasons that follow.

### C. The breach of confidentiality claim under state law should be dismissed because Arhaus's allegations show there was no "unauthorized" disclosure.

Arhaus's conclusory allegation that Ms. Chi breached the 2022 Confidentiality Agreement is belied by the plain language of the agreement. First, as argued above, the alleged vendor identity information is not confidential (and not a trade secret), and thus may not be the basis of a claim of breach. Second, any alleged transfer of Arhaus's information to Ms. Chi's personal storage and email was expressly authorized by the Confidentiality Agreement. Third, the definition of "Confidential Information" in Section 2.1 of that 2022 Confidentiality Agreement is so overbroad and vague as to be void and unenforceable under California Business & Professions Code Section 16600.

#### 1. The 2022 Confidentiality Agreement authorized use of personal accounts.

Section 2.3 of the 2022 Confidentiality Agreement expressly allowed Ms. Chi to use her personal accounts and data storage. Specifically, the section, titled "Employee Recordkeeping, Computer Use, and Mobile Devices" anticipates that employees may "store[] any Company information with a third-party service provider (such as Yahoo, Google Docs, DropBox or iCloud" as long as the employee "consents to the service provider's disclosure of such information to Company" and "execute[s] any additional authorizations required by the service provider to disclose Company's information to Company." (FAC Ex. E at 3.) Arhaus does not allege that it sought the "service

---

612 (9th Cir. 2016). To "properly plead diversity jurisdiction . . . with respect to a limited liability company, the citizenship of all of the members must be pled." *Id.* at 611.

provider's disclosure" of any information or that Ms. Chi was asked to execute any "authorization required by the service provider," much less that she refused to execute any such document.

Thus, Arhaus's allegations of "examples" of Ms. Chi's supposed "regular practice of requesting that Arhaus content be sent to her personal email address" (FAC ¶ 32) do not show "unauthorized" disclosure and cannot form the basis of a claim that Ms. Chi breached her agreement. For instance, another Arhaus employee, Kevin Whitley, sending a "draft of the Fall 2025 Arhaus catalog" simultaneously to Ms. Chi's work and personal email addresses was authorized and cannot be the basis of a claim of breach. (FAC ¶ 32.)

### 2. The 2022 Confidentiality Agreement is overly broad and thus void.

The Confidentiality Agreement's broad confidentiality provision operates as a form of non-compete agreement that restricts Ms. Chi's ability to engage in her profession. "Confidential Information" as defined in Section 2.1 of the agreement as "information in any form (tangible or intangible), related to Company's business that Company has not made public or authorized public disclosure of, and that is not generally known to the public or to other persons who might obtain value or competitive advantage from its disclosure or use." (FAC ¶ 28.) But the list of categories that are part of the definition of information to be kept confidential is extensive and includes broad and vague terms such as "know how," "methods," "techniques," "Company store information," and customer "preferences." (*Id.*).

This broad and vague provision preventing a former employee from going to a new employer in same the industry and using her "know-how," "method," or "techniques" that she learned at her previous job conflicts with California's strong public policy that favors employee mobility expressed in the Business and Professions Code. Section 16600(a) provides that "every contract by which anyone is restrained from engaging in a lawful, profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600(a).

This de facto non-compete agreement clearly restricts Ms. Chi's ability to engage in her profession and is thus void. In *Brown v. TGS Management Co., LLC*, the court found a long, overbroad confidentiality provision that interferes with an employee's ability to find another job in the same industry "operate[d] as a de facto noncompete provision" and was "void *ab initio* and

unenforceable." 57 Cal. App. 5th 303, 318-19 (2020); *see also AMN Healthcare, Inc. v. AYA Healthcare Services*, 28 Cal. App. 5th 923, 940, 948 (2018) (definition of confidential information that interfered with employee's right to compete void under § 16600). California law is clear that the prohibition of Section 16600(a) "shall be read broadly . . . to void the application of any noncompete agreement in an employment context, or any noncompete clause in an employment contract, no matter how narrowly tailored, that does not satisfy an exception in this chapter." Cal. Bus. & Prof. Code § 16600(b).

### D. The California Unfair Business Practices claim under § 17200 should be dismissed because it is preempted by CUTSA.

Arhaus alleges that Ms. Chi committed "unfair business practices" in violation of California Business & Professions Code, Section 17200. (FAC ¶ 89, 91.) According to Arhaus, Ms. Chi "unfairly and deceptively misappropriated and retained Confidential Information" and is using it "to, at the very least, steal Arhaus' vendors." (FAC ¶ 89, 90.)

But CUTSA "provides 'the exclusive civil remedy' for conduct 'based upon misappropriation of a trade secret.'" *Rescue 1 Financial, LLC v. Complete Debt Relief, LLC*, 2023 WL 6373884 at *7 (C.D. Cal. 2023) (citing *Waymo LLC v. Uber Techs, Inc.,* 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017)). Therefore, a state law claim, including one under Section 17200, is superseded by CUTSA if 'based on the same nucleus of facts as trade secret misappropriation.'" *Id.* (citing *SunPower Corp. v. Solar City Corp.,* 2012 WL 6160472, at * 3 (N.D. Cal. 2012)). The statute's "preemptive sweep is broad—it supersedes all claims premised on the wrongful taking and use of confidential and proprietary information, even if that information does not meet the statutory definition of a trade secret." *Id.* Since this claim is based on the same facts underlying Arhaus's trade secret claims, it must be dismissed with prejudice because it is superseded or preempted by CUTSA.

### E. The California common law unfair competition claim should be dismissed because Arhaus does not allege that Ms. Chi engaged in "passing off."

Arhaus alleges that Ms. Chi's "actions, as alleged in this Complaint, constitute unfair competition" to assert a California common law unfair competition claim. (FAC ¶ 95.) The Court

should dismiss this claim because Arhaus fails to allege the key element of that cause of action, namely that Ms. Chi engaged in "passing off" Arhaus's goods as her own.

The "common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008) (affirming dismissal of common law unfair competition claim) (citing *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1263 (1992)). *See also*, *Rider Clothing LLC v. BoardRiders, Inc.*, 2019 WL 8163813, at *5 (C.D. Cal., Nov. 26, 2019) (the "crux of a common law unfair competition claim" is that defendant "deliberately misled consumers into believing that [her] goods are Plaintiff's.").[2] Thus the "Ninth Circuit has held that allegations of 'passing off,' are necessary to state a claim for common law unfair competition." *Bakemark USA, LLC v. Navarro*, 2023 WL 3317001, at *3 (C.D. Cal., Apr. 28, 2023). Common law unfair competition claims failing to allege 'passing off' or its equivalent are routinely dismissed. *See, e.g.*, *Sybersound*, 517 F.3d at 1153 (affirming dismissal); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997) (affirming dismissal); *Bakemark*, 2023 WL 3317001, at *3-5 (dismissing claim and collecting and discussing cases); *Quintessential, LLC v. Quintessential Brands S.A.*, 2022 WL 357502, at *3 (N.D. Cal. 2022) (dismissing claim).

Arhaus does not allege that Ms. Chi passed off goods as Arhaus' goods, or that she exploited trade names or trademarks, or engaged in any conduct analogous to passing off. To the contrary, the Complaint merely alleges contacts or attempts to meet with certain vendors. (FAC ¶¶ 54-55 (Vietnamese stone vendor "turned RH away"); FAC ¶¶ 57-59 (Chi "attempted to meet" dealer in Paris); FAC ¶¶ 60-62 (Chi or someone at RH "reached out" to a Romanian vendor and allegedly "contacted" other unspecified vendors). None of this alleges conduct that could be read as passing off products as someone else's to cause customer confusion.

In any event, this common law claim is likewise preempted by CUTSA because it is based on the "same nucleus of facts" as the trade secret claims. *See Digital Envoy, Inc. v. Google, Inc.*,

---

[2] The Westlaw version of this case erroneously reads, "… that then goods are Plaintiff's" at this location. The court order on the docket reads, "… that their goods are Plaintiff's." See *Rider Clothing LLC*, No. 2:19-CV-04098-RGK-E (C.D. Cal., Nov. 26, 2019) (Dkt. No. 50 at 8).

370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005); *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009).

**F.     The California Labor Code claim should be dismissed because § 2860 does not provide a cause of action, and is preempted by CUTSA.**

Arhaus purports to assert a claim for relief under California Labor Code Section 2860 ("Section 2860"). (FAC ¶¶ 97-102.) Arhaus alleges that "Chi took and misappropriated Arhaus' Trade Secrets and other Confidential Information which belonged to Arhaus, in violation of the requirements and obligations imposed on Chi under Labor Code § 2860." (FAC, ¶ 99.) But that provision does not expressly impose "requirements and obligations."

The claim should be dismissed because Section 2860 does not provide for a private cause of action. California courts "consider the statute's language first, as it is the best indicator of whether a private right to sue exists." *Noe v. Superior Court*, 237 Cal. App. 4th 316, 336 (2015) (citation omitted). Here, the statute does not "expressly state that a person has or is liable for a cause of action for a particular violation," or "refer to a remedy or means of enforcing its substantive provisions," or say that a person who may sue is entitled to recover. *Id.* (cleaned up). All Section 2860 does is make a declaration of ownership. The entire section reads:

> Everything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment.

Nothing in that language "strongly and directly indicate[s] that the Legislature intended to create a private cause of action." *Id.; compare, e.g.,* Cal. Labor Code § 226(e) ("entitled to recover"); Cal. Labor Code § 1194(e) ("entitled to recover").

Nor is there any legislative history showing a "clearly manifested" legislative intent to create a private cause of action despite the lack of any statutory language doing so. *Id.* at 337. Section 2860 was a re-codification of Civil Code Section 1985 that had been codified in 1872. The statute has not been amended since the re-codification in 1937. See West's Ann. Cal. Lab. Code § 2860 (notes).

Finally, even if Section 2860 could somehow be construed to allow a private cause of action, since it relies on the same allegations of misappropriation of "Trade Secrets and Confidential

Information" at the heart of Arhaus's CUTSA claim, (*see* FAC ¶¶ 68-78), it "is therefore pre-empted by the CUTSA." *Zoom Imaging Solutions, Inc. v. Roe*, 2019 U.S. Dist. LEXIS 195374, *25 n. 1 (E.D. Cal. 2019).

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Ms. Chi's motion to dismiss and dismiss the claims asserted against her in the First Amended Complaint.

Dated: October 24, 2025

ILLOVSKY GATES & CALIA LLP
EUGENE ILLOVSKY
KEVIN CALIA
CHRISTOPHER HALES

By: */s/Kevin Calia*
Kevin Calia

Attorneys for Defendant
Lisa Chi