SABRINA L. SHADI, Bar No. 205405
*sshadi@bakerlaw.com*
CHRISTINA J. MOSER, Bar No. 199027
*cmoser@bakerlaw.com*
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone: 310.820.8800
Facsimile: 310.820.8859

SAFINA MOTIWALA, Bar No. 358668
*smotiwala@bakerlaw.com*
**BAKER & HOSTETLER LLP**
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone: 415.659.2600
Facsimile: 415.659.2601

*Attorneys for Plaintiff*
ARHAUS, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

ARHAUS, LLC, a Delaware limited liability company,

Plaintiff,

v.

LISA CHI, an individual,

Defendant.

Case No.: 25-cv-06233-JD

**SECOND AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Arhaus, LLC ("Arhaus" or "Plaintiff") alleges as follows:

## NATURE OF ACTION

1. Defendant Lisa Chi ("Chi") misappropriated confidential information and trade secrets that Chi acquired while employed by Arhaus in a position of trust as Chief Merchandising Officer in order to gain a competitive advantage in the market, with Chi breaching her Confidentiality Agreement with Arhaus in the process.

## THE PARTIES

2. Plaintiff, Arhaus, LLC ("Arhaus" or "Plaintiff") is, and at all relevant times referenced herein was, a limited liability company organized and existing under the laws of Delaware with its principal place of business in Boston Heights, Ohio.

3. Arhaus, LLC is 28% owned by FS Arhaus Holding, Inc. and 72% owned by Homeworks Holdings, Inc. FS Arhaus Holding Inc. is a Delaware corporation with its principal place of business in Boston Heights, Ohio. Homeworks Holdings, Inc. is an Ohio corporation with its principal place of business in Boston Heights, Ohio. Arhaus, Inc. is a Delaware corporation with its principal place of business in Boston Heights, Ohio, and owns 100% of both FS Arhaus Holding, Inc. and Homeworks Holdings, Inc.

4. On information and belief, Defendant Lisa Chi, is, and at all relevant times hereto was, an individual who is a resident of Ross, California.

5. Arhaus is informed and believes, and based upon such information and belief alleges, that Defendant, at all times relevant hereto, conspired and acted in concert with other non-named parties to commit the wrongs against Arhaus alleged herein, and in doing so were at all relevant times the agents, servants, employees, principals, joint venturers, alter egos, co-conspirators and/or partners of each other. Arhaus is further informed and believes, and based upon such information and belief alleges, that in doing the things alleged in this Complaint, the Defendant was acting within the scope of authority conferred upon that defendant by the consent, approval, and/or ratification of the other non-named parties, whether said authority was actual or apparent.

## JURISDICTION

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1836, *et seq.* (the Defend Trade Secrets Act of 2016); 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1367 (supplemental jurisdiction).

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the action is between citizens of different states and the matter in controversy exceeds, exclusive of interest and costs, a sum of $75,000.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

8. This Court has personal jurisdiction because Defendant Chi is a citizen of California and resides in this judicial district.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district, and under 28 U.S.C. § 1391(b)(1) because the Defendant resides in this judicial district.

## DIVISIONAL ASSIGNMENT

10. Arhaus is informed and believes, and based upon such information and belief alleges, that this Court is the proper venue, and according to Civil L.R. 3-2(d), this Division is the proper division because (a) Defendant Chi resides in Marin County, California and (b) the events giving rise to the claims raised in this Complaint occurred in California, including in Marin County, California.

## FACTUAL BACKGROUND

### *Arhaus, LLC's Business*

11. Since 1986, Arhaus has been in the business of designing and selling upscale home furnishings through its retail stores and catalogs.

12. Arhaus is a well-known and respected brand.

13. Arhaus was founded on the idea that furniture should be responsibly sourced, lovingly made, and built to last.

14. Featuring unique designs, limited edition pieces and sustainable and high-quality materials, Arhaus grew its footprint from one Ohio store in 1986 to 103 locations across the United States in September 2025.

15. Arhaus is currently one of the top brands in the luxury home furnishings market.

16. Despite difficulties facing the luxury home furnishings market over the past several years, Arhaus has made substantial gains against its competitors, including Restoration Hardware, Inc. d/b/a RH ("RH"). RH is a direct and primary competitor of Arhaus.

17. Arhaus' Trade Secrets and Confidential Information are critical to the success of its business.

18. Arhaus invests and continues to invest significant time, intellect, money, and other resources to protect its Trade Secrets and Confidential Information, which Arhaus employees contractually agree to hold in the strictest confidence and not use or disclose in any unauthorized manner per the Confidentiality Agreement.

19. Arhaus' remarkable success over the past several decades has been fueled by its worldwide network of specialty vendors— important suppliers, buyers, and consultants—who form a subset of Arhaus' more than 400 suppliers and are located both in the United States and foreign countries. These specialty vendors inform Arhaus' unique aesthetic due to the rarity and/or superior quality of their goods, their design capabilities and the financial and other relationship terms resulting in high quality goods at prices that allow Arhaus to compete effectively against competitors.

20. Arhaus owns highly valuable trade secrets in confidential information related to this network of specialty vendors, including (as to many) their identities and (as to each) non-public information regarding: their relative importance to Arhaus; Arhaus pricing strategies, ordering histories and timing; the terms Arhaus reaches with its vendors, supplier concessions and likelihood of concessions; design capabilities; sourcing methods; and manufacturing methods, consistency, quality and capacity. These trade secrets exist as to each vendor and as a collection of information built over decades that provides a roadmap for how Arhaus is able to deliver unique, high-quality products at competitive prices (collectively known herein as "Arhaus Trade Secrets").

21. This information is valuable because Arhaus' competitors, like RH, could use the information to target Arhaus' most important vendors and reach arrangements with them that impact vendors' capacity to handle Arhaus orders, provide a short cut to improve the quality of competitors' goods to Arhaus' level of quality, and/or allow competitors to better compete with Arhaus on pricing.

22. Given Ms. Chi's prior statements about RH's history of targeting Arhaus products and vendors, as well as the supply chain issues confronting RH, Ms. Chi's current employer, in particular, would benefit from the disclosure and use of Arhaus Trade Secrets.

23. Many of the vendors stem from personal relationships cultivated by Arhaus' founder and CEO, John Reed ("Reed"). The identities of those specialty vendors Arhaus considers important to its success (and the attributes and relationship qualities that make them important) are known by only a handful of employees within Arhaus itself and they are unknown to the broader home furnishings industry.

24. Over the past year, as tariff policies have rocked the industry, Arhaus has managed to continue its arc of success in large part due to its specialty vendor network.

***Chi's Key Position of Trust at Arhaus***

25. Lisa Chi served as a Consultant in merchandising and product development at Arhaus from March 29, 2021 to June 25, 2021.

26. Prior to serving as a Consultant for Arhaus, Chi worked for Arhaus competitor RH in a mid-level management position as Senior Vice President of Merchandising for Upholstery for about three years until her employment was terminated.

27. Arhaus later appointed Chi as its Chief Merchandising Officer ("CMO").

28. Chi served as Arhaus' CMO from July 1, 2021 until May 16, 2025, where she oversaw the full product lifecycle from concept to customer.

29. In her role as CMO at Arhaus, Chi provided strategy leadership across many of Arhaus' departments which were interwoven and essential to the company's performance, including Product Development, Buying, Merchandise Planning & Allocation (MP&A), Sourcing & Quality, and TB Arhaus Upholstery. Arhaus expended significant resources training Chi as a top level Arhaus executive, including regarding her oversight of Arhaus vendor relationships.

30. During her time at Arhaus, Chi expressed frustration with RH's copying of Arhaus designs and conveyed her belief that RH was using its larger size to induce longtime mutual vendors to commit to exclusive relationships with RH as part of RH's strategy to reduce Arhaus' access to its preferred vendors.

31. In her role as CMO, Chi also contributed to Arhaus' intellectual property enforcement, including litigation Arhaus filed against RH in 2024—who she insisted was targeting



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Arhaus' designs, marketing, and overall aesthetic. Arhaus settled the litigation with RH in October 2024.

32. Due to the nature of her position, Chi was personally introduced to many of Arhaus' specialty vendors. Chi assumed primary responsibility for meeting with vendors to obtain new product ideas and negotiating with vendors for optimal pricing and other financial terms.

33. Due to the nature of her position, Chi was privy to Arhaus Trade Secrets with this foreign and domestic network of specialty vendors.

34. Arhaus never gave Chi authorization to use or disclose any of its Confidential Information or Arhaus' Trade Secrets to RH or any other entity (except those entities with whom Arhaus was engaged with in the normal course of business for the benefit of Arhaus).

35. Also under Chi's direction, Arhaus was heavily involved during the last two years and particularly the first part of 2025 in secret plans to launch its first ever Bath collection, which launched August 6, 2025.

36. Arhaus takes reasonable measures to ensure the secrecy of Arhaus' Trade Secrets and Confidential Information, including by investing time, money, and other resources to protect its Trade Secrets and Confidential Information using electronic measures.

37. Specifically, Arhaus employs industry-standard security software to detect and respond to cyber threats, ensure secure authentication (including multi-factor authentication and single sign-on and risk-based access policies to protect against unauthorized access to on-premises and cloud resources); a cybersecurity solution that detects and blocks email-based threats; software enabling granular access controls to manage file and site access, with features like link expiration, required authentication, two-factor verification, and external sharing restrictions to prevent data leakage and unauthorized access; and an auditing solution that protects Arhaus' environment by logging and enabling searchable records of email activities. Further, Arhaus laptops are password protected, and Arhaus utilizes a VPN.

38. When hired as a Consultant by Arhaus, Chi signed a Consulting Agreement, a copy of which is attached as **Exhibit A** (the "2021 Consulting Agreement"), for services from March 29,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

2021 to June 25, 2021. Per the 2021 Consulting Agreement, Chi agreed to protect Arhaus Confidential Information, including "vendor names/lists."

39. During her onboarding, Chi also reviewed and confirmed Arhaus' Confidentiality Acknowledgement and Agreement on June 26, 2021, a copy of which is attached as **Exhibit B** (the "2021 Confidentiality Agreement"), which confirms that information gained concerning "vendors and/or contacts, sources of merchandise" is confidential and not to be divulged, including following her employment. Chi also agreed to "return any and all confidential Arhaus information or materials in your possession at that time" upon leaving Arhaus.

40. All Arhaus employees are subject to the Arhaus Code of Conduct, a copy of which is attached as **Exhibit C** ("Code of Conduct"), and Employee Handbook, a copy of which is attached as **Exhibit D** ("Handbook"), which explain further requirements regarding confidentiality.

41. In relevant part, the Code of Conduct contains both a confidentiality clause, which requires employees to maintain confidentiality of all information entrusted to them except when disclosure is authorized or legally mandated, and a corporate opportunities clause, which prohibits employees and officers from competing with Arhaus and from taking opportunities for themselves or directing third parties to take opportunities that are discovered through the use of Arhaus property or confidential information, protecting "sources of merchandise."

42. Similarly, the Handbook prohibits the disclosure and/or use of any Arhaus Trade Secrets or Confidential Information, stating "vendors and/or contacts, sources of merchandise" is confidential.

43. On November 16, 2022, in connection with an award of equity, Chi signed a Confidentiality Agreement with Arhaus, a copy of which is attached as **Exhibit E** (the "2022 Confidentiality Agreement"), recognizing that she was in a position of trust with Arhaus, recognizing and accepting the continuing duty of loyalty she owed Arhaus stemming from that position of trust, and agreeing not to, among other things, engage in any unauthorized use or disclosure of Arhaus' Confidential Information, which was a continuing contractual obligation that survived beyond termination of employment with Arhaus.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

44. As part of signing the 2022 Confidentiality Agreement, Chi agreed that the categories of information identified as Arhaus' Confidential Information are valuable assets and have economic value, actual and potential, because they are not generally known by the public or others who could use them to their own economic benefit and/or to the competitive disadvantage of Arhaus, and thus, should be treated as Arhaus' trade secrets.

45. The 2022 Confidentiality Agreement details the position of trust and duty of loyalty as follows:

> **1.1 Position of Trust.** By entering into this Agreement and accepting the equity award provided by Company, Employee agrees and acknowledges that Company has granted the equity award(s) to Employee to secure Employee's commitment to advance and promote the business interests and objectives of Company. Employee further agrees and acknowledges that, in Employee's role as a key member of the executive and/or management team of Company or an affiliate of Company, Employee has been entrusted with, and will continue to be entrusted with, Company's Confidential Information, goodwill of customers, clients, and vendors, and business relationships.
>
> **1.2 Duty of Loyalty and Conflicts of Interest.** During employment, Employee will dedicate all of Employee's working time to Company and use best efforts to perform the duties assigned, remain loyal, comply with Company policies and procedures, and avoid conflicts of interest. It shall be considered a conflict of interest for Employee to knowingly assist or take steps to form or further a competing business enterprise while employed with Company. Employee will promptly inform Company of any business opportunities related to Company's lines of business that Employee becomes aware of during employment, and any such opportunities shall be considered the intellectual property of Company whether pursued by Company or not. Nothing in this Agreement shall eliminate, reduce, or otherwise remove any legal duties or obligations that Employee would otherwise have to Company through common law or statute.

46. The 2022 Confidentiality Agreement defines Confidential Information as follows:

> **2.1 Definition of Confidential Information**. "**Confidential Information**" refers to an item of information, or a compilation of information, in any form (tangible or intangible), related to Company's business that Company has not made public or authorized public disclosure of, and that is not generally known to the public or to other persons who might obtain value or competitive advantage from its disclosure or use. Confidential Information will not lose its protected status under this Agreement if it becomes generally known to the public or to other persons through improper means such as the unauthorized use or disclosure of the information by Employee or another person. Confidential Information includes, but is not limited to: (a) Company's business plans and analysis, customer, client and prospect lists, Company store information, customer/client documents and information (including contact information, preferences, margins, order guides, and order histories) internal reports, internal business-related communications, marketing plans and strategies,



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

research and development data, data compilations regarding buying practices, human resources information obtained from a confidential personnel file (such as internal evaluations of the performance, capability and potential of any Employee of Company affiliates), financial reports, operational analysis data, methods, techniques, technical data, know-how, innovations, computer programs, un-patented inventions, and trade secrets; and (b) information about the business affairs of third parties (including, but not limited to, clients and acquisition targets) that such third parties provide to Company in confidence. Confidential Information will include trade secrets, but an item of Confidential Information need not qualify as a trade secret to be protected by this Agreement. Company's confidential exchange of information with a third party for business purposes will not remove it from protection under this Agreement. Employee acknowledges that items of Confidential Information are Company's valuable assets and have economic value, actual or potential, because they are not generally known by the public or others who could use them to their own economic benefit and/or to the competitive disadvantage of Company, and thus, should be treated as Company's trade secrets. Confidential Information does not include information lawfully acquired by a non-management employee about wages, hours or other terms and conditions of non-management employees if used by them for purposes protected by Section 7 of the National Labor Relations Act (the NLRA) such as joining or forming a union, engaging in collective bargaining, or engaging in other concerted activity for their mutual aid or protection.

47. The 2022 Confidentiality Agreement details unauthorized use and disclosure as follows:

**<u>2.2 Unauthorized Use or Disclosure</u>.** Employee agrees to not engage in any unauthorized use or disclosure of Confidential Information (as defined above), or knowingly use Confidential Information to harm or compromise the interests of Company. The foregoing restriction will apply throughout Employee's employment and thereafter for so long as the information at issue continues to qualify as a trade secret or Confidential Information as defined above. Employee understands this means Employee may not use or disclose Confidential Information in any manner that is not within the course and scope of employment with Company and undertaken for the benefit of Company. If compelled to disclose information via court order, subpoena, or other legal mandate, Employee will give Company as much written notice as possible under the circumstances, will refrain from use or disclosure for as long as the law allows, and will cooperate with Company to protect such information, including taking every reasonable step to protect against unnecessary disclosure. However, nothing in this Agreement, including the foregoing, prevents Employee from communicating with the EEOC, the SEC, the DOL, or any other governmental authority, making a report in good faith and with a reasonable belief of any violations of law or regulation to a governmental authority, or cooperating with or participating in a legal proceeding relating to such violations. Employee is also strictly prohibited from using any prior employer's confidential information, documents, or materials in Employee's position at Company. Just as the Company take measures to protect Confidential Information, the Company respects prior employer's similar right and prohibits use of any of prior employer confidential information in performing Employee's work for Company. If Company determines that Employee has possession of, or is using a previous employer's confidential information, Employee may be subject to discipline up to, and including, termination of employment.

48. The 2022 Confidentiality Agreement details Arhaus' ability to access Chi's third-party service-providers as follows:

> **<u>2.3 Employee Recordkeeping, Computer Use, and Mobile Devices.</u>** (a) Employee agrees to use the authorizations, Confidential Information, and other benefits of Employee's employment to further the business interests of Company. Employee agrees to preserve and not destroy records on current and prospective Company customers, clients, suppliers, and other business relationships that Employee develops or helps to develop, and not use these records in any way, directly or indirectly, to harm Company's business. When Employee's employment with Company terminates, or earlier if so requested, Employee will return to Company all documents, records, and materials of any kind in Employee's possession or under Employee's control, incorporating Confidential Information or otherwise, relating to Company's business, and any copies thereof (electronic or otherwise), other than documents regarding Employee's individual compensation, such as pay stubs and benefit plan booklets. Employee agrees that the obligation to return property extends to all information and property, not just Confidential Information. (b) Employee agrees not to use Company's computers, servers, email systems, or other electronic communication or storage devices for personal gain, or to otherwise knowingly compromise a business interest of Company; any activity in violation of this provision shall be considered unauthorized use harmful to Company's business systems. (c) If Employee stores any Company information with a third-party service provider (such as Yahoo, Google Docs, DropBox or iCloud), Employee consents to the service provider's disclosure of such information to Company. Where allowed by law, Employee will execute any additional authorizations required by the service provider to disclose Company's information to Company.

***Chi's Access and Storage of Confidential Information***

49. Arhaus issued Chi a Macbook on June 15, 2024 and an iPad Pro on September 13, 2024 for use in connection with her work for Arhaus. Chi did not return the devices upon her departure from Arhaus on May 16, 2025.

50. Throughout her time employed by Arhaus, Chi had access to Arhaus' Trade Secrets and Confidential Information, and she routinely requested or gave access to such proprietary, trade secret, and Confidential Information to her personal email account, lisachi823@gmail.com as well as other Google storage devices and/or spaces she had access to such as Google Docs.

51. On February 26, 2025, Kevin Whitley sent an email titled "Fall" to Chi's Arhaus email address and personal email address, pursuant to Chi's regular practice of requesting that Arhaus content be sent to her personal email address. Attached to this email was a draft of the Fall 2025 Arhaus Catalog, among the most closely-guarded trade secrets and pieces of Confidential Information at Arhaus.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

52. On April 10, 2025, Chi received an email titled "I: Bellina March Reorders" which was sent to her Arhaus email address and her personal email address. Attached to this email were documents titled "Bellina Projections 4.8"; "Bellina Open PO – 4.7.25 – CJ Notes"; and "Copy of Bellina Priority SKU List 4.7.25."

53. On April 29, 2025, Chi forwarded an email titled "China Sourcing %" from her Arhaus email account to her personal email address. This email is labeled "Privileged and Confidential" at the top. Attached to the email were the Arhaus 1Q 2025 Earnings Script and the Arhaus Sourcing Slides.

54. All of the documents, presentations, catalogs, and emails enumerated in Paragraphs 50-53 contain Arhaus Trade Secrets and/or Confidential Information, which are protected from unauthorized use and/or disclosure under the 2022 Confidentiality Agreement for as long as such information qualifies as Trade Secret information or Confidential Information. The instances cited in Paragraphs 50-53 are merely examples of Chi's extensive transfer of Arhaus' Trade Secrets and/or Confidential Information to her personal email and Google accounts.

55. Despite resigning from Arhaus on May 16, 2025, Chi retained her Arhaus-issued iPad and laptop.

56. Following Arhaus' demand for immediate return of those devices, Chi (through counsel) claimed they had been sent to a third-party vendor for copying.

57. Chi's iPad was returned on June 25, 2025. Her laptop was not returned until July 28, 2025, two and a half months after her resignation and only after Arhaus filed the Original Complaint on July 24, 2025.

58. Despite multiple requests, a copy of the vendor analysis was never provided to Arhaus.

59. Following Chi's departure from Arhaus, Arhaus also conducted an inspection of her electronic activity on Arhaus' system and found that a number of documents Chi had sent to her personal Google account, including those outlined in Paragraphs 50-53, were highly sensitive such that Chi's post-employment access to the documents caused Arhaus tremendous concern.

60. For more than a month, Arhaus attempted to negotiate an inspection of Chi's personal devices and third-party service providers to confirm removal of confidential Arhaus material but Chi delayed returning Arhaus' devices and failed to grant Arhaus access to her Gmail and Google Drive accounts, prompting the filing of this lawsuit.

***Chi's New Employment at RH***

61. In or around December 2024, Chi approached Reed. She told him that RH was reaching out to her and asked Reed for higher compensation than she was currently receiving from Arhaus.

62. In order to retain Chi and to prevent her defection to a close competitor, Arhaus significantly increased Chi's compensation and potential equity in Arhaus. Arhaus provided Chi with multiple compensation and benefits increases in January, March, and April 2025 in response to her demands. As a direct result of Chi's demands, Arhaus also had to significantly increase the compensation of its top three executives for the sake of parity. Arhaus gave Chi larger increases than her peer executives in several categories.

63. Chi repeatedly assured Reed that the increases were sufficient to secure her loyalty and commitment to Arhaus and that she had rebuked Friedman's earlier recruitment efforts.

64. Arhaus later learned that Chi had traveled to RH headquarters to meet with Friedman in person. Months after Chi left Arhaus, Arhaus learned that people at RH knew as early as April 25, 2025 that Chi was returning to RH.

65. Upon information and belief, RH's focused its efforts to recruit Chi in early April 2025 following RH's financial losses due to the impact of evolving tariff policies on its supply chain.

66. In early May, Chi embarked on a tour of Arhaus' vendors during which she personally inspected hundreds of new samples and obtained the latest details on hundreds of products in development.

67. On May 8, 2025, Arhaus held its quarterly earnings call, during which Arhaus noted the strength of its sourcing relationships during a period of tariff uncertainty.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

68. Days after returning from her trip, on May 15, 2025, Chi participated in an Arhaus Board meeting, at which she presented to the Board on a number of highly confidential matters related to company strategy, sourcing, tariffs, financial strategy, new product line developments, and new marketing strategies. The Board, with Chi's involvement, engaged in extensive discussions on these topics and made decisions shaping Arhaus' financial, product, and marketing strategies for the remainder of the year and in the longer term.

69. The next day, on May 16, 2025, Chi shocked Arhaus by turning in her notice and, shortly thereafter, started officially working for RH as President, Co-Chief Merchandising & Creative Officer, where she is responsible for co-leading Product Development, Merchandising, Inventory Planning, Sourcing, Manufacturing, and Marketing, across RH's Physical, Print, and Digital platforms.

70. This position (and Chi's compensation) was a significant improvement over the middle management position Chi occupied at RH years earlier.

71. Despite informing Arhaus that her compensation increases were sufficient, her move to RH increased her annual salary to $1,000,000, with guaranteed increases and additional benefits.

72. While informing Reed she was leaving, Chi admitted that she had spoken with Friedman for ***forty hours*** over the preceding months and that she now believed he was a changed man.

***Chi's Misappropriation of Arhaus' Trade Secrets and Confidential Information***

73. Arhaus has learned of several incidents following Chi's departure from Arhaus in which Chi and/or her associates at RH have used Arhaus Trade Secrets to reach out to Arhaus specialty suppliers and consultants on behalf of RH.

74. In early August, Arhaus learned that Chi and/or her associates at RH had reached out to a small Vietnamese stone vendor on behalf of RH. The vendor has become a key Arhaus vendor of unique stone material because it provides Arhaus the best pricing in Vietnam and all or most of its output is designated for Arhaus.

75. Chi and/or other RH associates asked about their capacity to service RH's needs. Because the company is at full capacity serving Arhaus' needs, it turned RH away.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

76. The relative importance to Arhaus; Arhaus pricing strategies, ordering histories and timing; the terms Arhaus reaches with the vendor, supplier concessions and likelihood of concessions; design capabilities; sourcing methods; and manufacturing methods, consistency, quality and capacity of this vendor are closely guarded Arhaus Trade Secrets .

77. In early September, Arhaus learned that Chi visited Paris for the September 5, 2025 opening of RH Paris. While there, she visited the Puces de Saint-Ouen, the largest antique market in the world. Buried within the warren of market stalls is an antiques dealer who has become a key Arhaus consultant, traveling with Arhaus to introduce the company to hard-to-find, out-of-the-way places in France and Belgium for design inspiration and one-of-a-kind product buys.

78. The dealer only performs this service for Arhaus based on his personal relationship with Reed. The identity of this dealer and Arhaus' relationship with this dealer are known by very few Arhaus employees.

79. Chi attempted to meet with the dealer on behalf of RH during her September Paris trip.

80. Also in early September, Arhaus learned that Chi and/or one of her associates at RH reached out to a small Romanian vendor who has become one of Arhaus' most important vendors over the past six years, such that it featured the family members in its Fall 2025 Catalogue.

81. Arhaus' Fall 2025 Catalogue was not released until August 27, 2025. Upon information and belief, prior to then, neither Chi nor RH would have known of the Romanian vendor, which is located three hours from the nearest airport, due to its size and obscurity. Very few Arhaus employees knew of this vendor's identity or the importance of its relationship with Arhaus; Chi learned of it because of her role as CMO at Arhaus.

82. Upon information and belief, Chi disclosed confidential information regarding the Romanian vendor to RH prior to release of Arhaus' Fall 2025 Catalogue.

83. Upon information and belief, following her departure from Arhaus, Chi contacted additional Arhaus vendors, not listed above, whose Arhaus Trade Secrets she and RH learned of through her employment at Arhaus and/or used or disclosed confidential information regarding those vendors to RH.

84. Arhaus' carefully cultivated foreign and domestic network of specialty vendors, including suppliers, consultants, and buyers, are essential to Arhaus' reputation for unique designs, quality products, and competitive pricing.

85. After Chi became an executive at RH, Chi still had access to Arhaus' Confidential Information and Trade Secrets through at least her personal email address, Google account and other personal cloud storage accounts, to which she had granted access to many Arhaus documents while working as CMO at Arhaus.

86. On information and belief, Chi accessed and disclosed such Arhaus Confidential Information and Trade Secrets, including confidential information regarding Arhaus' vendors, to her associates at RH, which includes herself, following her employment at Arhaus.

87. By using and disclosing Arhaus' Trade Secrets and Confidential Information to RH, Chi has misappropriated Arhaus' Trade Secrets and Confidential Information in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq, California Civil Code § 3426 et seq., and the (A) 2021 Consulting Agreement, (B) 2021 Confidentiality Agreement, (C) Code of Conduct, (D) Employee Handbook, and (E) 2022 Confidentiality Agreement that she acknowledged or signed. As a result, Arhaus has suffered irreparable harm.

**FIRST CAUSE OF ACTION**

**(Misappropriation of Trade Secrets – Civil Code § 3426 *et seq.*)**

88. Arhaus re-alleges and incorporates by this reference each and every foregoing paragraph of this Complaint, as though set forth in full.

89. Arhaus' Trade Secrets and Confidential Information include information that derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use and are subject to efforts that are reasonable under the circumstances to maintain their secrecy, including confidential information regarding Arhaus' vendors.

90. While employed by Arhaus, Chi had access to sensitive, proprietary Trade Secrets and Confidential Information, including but not limited to Arhaus' business plans and analysis, customer, client and prospect lists, vendor lists, Arhaus store information, customer/client

documents and information (including contact information, preferences, margins, order guides, and order histories) internal reports, internal business-related communications, marketing plans and strategies, research and development data, data compilations regarding buying practices, human resources information obtained from a confidential personnel file (such as internal evaluations of the performance, capability and potential of any Employee of Arhaus affiliates), financial reports, operational analysis data, methods, techniques, technical data, know-how, innovations, un-patented inventions, and trade secrets; and information about the business affairs of third parties (including, but not limited to, clients and acquisition targets) that such third parties provide to Arhaus in confidence.

91. Chi acknowledged that the foregoing information constitutes Arhaus Trade Secrets in (A) 2021 Consulting Agreement, (B) 2021 Confidentiality Agreement, (C) Code of Conduct, (D) Employee Handbook, and (E) 2022 Confidentiality Agreement.

92. Following her separation from Arhaus, Chi shared Arhaus' Trade Secrets and Confidential Information, including confidential information regarding Arhaus vendors, with her associates at RH, who is using them to Arhaus' detriment.

93. Chi has retained and used Arhaus' Trade Secrets and Confidential Information and has disclosed these trade secrets for the benefit of persons other than Arhaus.

94. Chi was aware that she was under a duty not to disclose or use Arhaus' Trade Secrets or Confidential Information. She signed or acknowledged no less than five documents during her time at Arhaus acknowledging this duty.

95. Chi has not been authorized by Arhaus to use or disclose Arhaus Trade Secrets or Confidential Information after her employment or for the benefit of persons other than Arhaus.

96. As a direct and proximate result of Chi's misappropriations, Arhaus has suffered and continues to suffer actual damages in an amount to be proven at trial, in excess of the minimum jurisdiction of this Court.

97. As a further direct and proximate result of Defendant's misappropriation, Defendant has been, individually and/or in concert, unjustly enriched in an amount to be proven at trial, in excess of the minimum jurisdiction of this Court.

98. Chi's conduct as described above was willful and malicious and done with the deliberate intent to injure Arhaus and benefit herself and others, causing injury to Arhaus. Such actions were malicious, oppressive and constituted despicable conduct in conscious disregard of Arhaus' rights, and by reason thereof, Arhaus is entitled to reasonable attorneys' fees and costs, and punitive damages under California Civil Code § 3426.3.

99. Unless restrained and enjoined, Chi will continue to misappropriate Arhaus' Trade Secrets and Confidential Information, causing irreparable harm to Arhaus.

**SECOND CAUSE OF ACTION**

**(Breach of Confidentiality Agreement)**

100. Arhaus re-alleges and incorporates by reference each and every foregoing paragraph, as though set forth in full.

101. In connection with her employment by Arhaus, Chi entered into a valid and binding (A) 2021 Consulting Agreement, (B) 2021 Confidentiality Agreement, (C) Code of Conduct, (D) Employee Handbook, and (E) 2022 Confidentiality Agreement.

102. Chi received legally sufficient consideration to support the 2021 Confidentiality Agreement and the 2022 Confidentiality Agreement, including with respect to the latter, an "equity award."

103. Arhaus has performed all terms, conditions, covenants, and promises required on its part to be performed in accordance with the 2021 Confidentiality Agreement and the 2022 Confidentiality Agreement.

104. Chi's actions, as described above, constitute a direct, substantial, and material breach of the 2021 Confidentiality Agreement and Sections 1.1, 1.2, 2.2, and 2.3 of the 2022 Confidentiality Agreement.

105. The 2022 Confidentiality Agreement contains a choice of law provision that states that the 2022 Confidentiality Agreement is governed by the laws of the State of California.

106. Chi's breaches of the 2021 Confidentiality Agreement and 2022 Confidentiality Agreement have directly and proximately caused Arhaus to suffer damages in an amount to be proven at trial, in excess of the minimum jurisdictional requirement of this court.

107. An award of monetary damages will not adequately compensate Arhaus for the damages it has incurred, and will continue to incur, by reason of Chi's breaches of the 2021 Confidentiality Agreement and 2022 Confidentiality Agreement. Unless the 2021 Confidentiality Agreement and 2022 Confidentiality Agreement are enforced, as to Chi's use or disclosure of Arhaus' Trade Secrets and Confidential Information, Chi will continue to breach the 2021 Confidentiality Agreement and 2022 Confidentiality Agreement, causing irreparable harm to Arhaus.

108. Pursuant to Section 3 of the 2022 Confidentiality Agreement, Arhaus is entitled to specific performance, injunctive relief, attorneys' fees and costs of obtaining relief, and any other legal or equitable relief or remedy allowed by law.

## THIRD CAUSE OF ACTION

**(Breach of Fiduciary Duty – Duty of Undivided Loyalty)**

109. Arhaus re-alleges and incorporates by reference each and every foregoing paragraph, as though set forth in full.

110. Chi received legally sufficient consideration to support the 2021 Confidentiality Agreement and the 2022 Confidentiality Agreement, including with respect to the latter, an "equity award."

111. Arhaus has performed all terms, conditions, covenants, and promises required on its part to be performed in accordance with the 2021 Confidentiality Agreement and the 2022 Confidentiality Agreement.

112. Chi owed fiduciary duties to Arhaus as an officer of the company who participated in management of the company and had discretionary authority in that managerial capacity.

113. In connection with her employment by Arhaus, Chi entered into a valid and binding 2022 Confidentiality Agreement acknowledging that "[e]mployee further agrees and acknowledges that, in Employee's role as a key member of the executive and/or management team of Company or an affiliate of Company, Employee has been entrusted with, and will continue to be entrusted with, Company's Confidential Information, goodwill of customers, clients, and vendors, and business relationships."

114. In connection with her employment by Arhaus, Chi entered into a valid and binding 2022 Confidentiality Agreement acknowledging that "[d]uring employment, Employee will dedicate all of Employee's working time to Company and use best efforts to perform the duties assigned, remain loyal, comply with Company policies and procedures, and avoid conflicts of interest."

115. Despite having already decided to accept a position with RH, one of Arhaus' biggest competitors, Chi failed to inform Arhaus of her conflict of interest for at least three weeks.

116. During the at least three weeks Chi kept her imminent employment with RH a secret, she was exposed and/or re-exposed to some of Arhaus' most confidential trade secrets, including the status of all products in development, vendor information, and highly confidential matters (including the directions Arhaus intended to take) related to company strategy, sourcing, tariffs, financial strategy, new product line developments, and new marketing strategies.

117. Arhaus would never have allowed Chi to visit Arhaus vendors, inspect products in development, participate in preparation for Arhaus' earnings call, participate in Arhaus' quarterly Board of Directors meeting, and retain access to confidential Arhaus documents if Arhaus had been informed of her intent to leave Arhaus for RH. Chi knew this.

118. Chi herself had remarked about RH's unending desire to emulate Arhaus' furniture and other product designs, marketing material, and other aspects of the Arhaus aesthetic.

119. Chi knew that exposing (or re-exposing) herself to Arhaus' most sensitive business information during the three weeks she already knew she was leaving for RH was inimical to Arhaus' best interests.

120. Chi knowingly acted against Arhaus' interests by exposing herself to Arhaus' Trade Secrets or Confidential Information such that Arhaus' most sensitive information would remain in her memory when she left for RH and, upon information and belief, disclosing Arhaus' Trade Secrets or Confidential Information to RH while still employed by Arhaus .

121. Chi knows that she would not have been authorized to use or disclose Arhaus Trade Secrets of Confidential Information if she had disclosed her plan to work for RH.

122. Chi has not been authorized by Arhaus to use or disclose its Trade Secrets or Confidential Information.

123. As a result of Chi's violation of the duties and obligations imposed on her by her employment at Arhaus, Arhaus has and will in the future suffer damages and injury in an amount according to proof at the time of trial.

124. In addition, unless Chi is restrained and enjoined from further use and disclosure and is required to return the Trade Secrets and other Confidential Information to Arhaus, Arhaus will suffer irreparable harm.

**FOURTH CAUSE OF ACTION**

**(Violation of California Labor Code § 2860)**

125. Arhaus re-alleges and incorporates by reference each and every foregoing paragraph, as though set forth in full.

126. California Labor Code § 2860 provides that everything that an employee acquires by virtue of his employment, except the compensation due him/her/they, belongs to the employer, whether acquired lawfully or unlawfully or during or after his/her/their employment.

127. Arhaus is informed and believes and thereon alleges that after Chi's separation from Arhaus and subsequent employment by competitor RH, Chi took and misappropriated Arhaus' Trade Secrets and other Confidential Information which belonged to Arhaus, in violation of the requirements and obligations imposed on Chi under California Labor Code § 2860.

128. For more than a month, Arhaus attempted to negotiate an inspection of Chi's personal devices and third-party service providers to confirm removal of confidential Arhaus material but Chi delayed returning Arhaus' devices and failed to grant Arhaus access to her Gmail and Google Drive accounts.

129. As a result of Chi's violation of the duties and obligations imposed on her by California Labor Code § 2860, Arhaus has and will in the future suffer damages and injury in an amount according to proof at the time of trial, and Chi has been unjustly enriched.

130. In addition, unless Chi is restrained and enjoined from further use and disclosure and is required to return the Arhaus Trade Secrets and other Confidential Information to Arhaus, Arhaus will suffer irreparable harm.

**<u>FIFTH CAUSE OF ACTION</u>**

**(Conversion – Company Property)**

131. Arhaus re-alleges and incorporates by reference each and every foregoing paragraph, as though set forth in full.

132. In connection with her employment by Arhaus, Chi entered into a valid and binding (A) 2021 Consulting Agreement, (B) 2021 Confidentiality Agreement, (C) Code of Conduct, (D) Employee Handbook, and (E) 2022 Confidentiality Agreement.

133. Chi possessed an Arhaus-issued Macbook and an iPad Pro for use in connection with her work for Arhaus.

134. Despite multiple requests, Chi prevented Arhaus from obtaining a copy of the vendor analysis Chi conducted on the Arhaus-issued devices.

135. For more than a month, Arhaus attempted to negotiate an inspection of Chi's personal devices and third-party service providers to confirm removal of confidential Arhaus material but Chi delayed returning Arhaus' devices and failed to grant Arhaus access to her Gmail and Google Drive accounts, in violation of the 2022 Confidentiality Agreement.

136. Chi still has not provided Arhaus access to or copies of the forensic image(s) made of her Arhaus devices or personal cloud storage accounts prior to the alleged deletion of Arhaus data from those devices and/or accounts.

137. As a direct and proximate result of Chi's conduct, Arhaus has suffered and continues to suffer actual damages in an amount to be proven at trial, in excess of the minimum jurisdiction of this Court.

138. Unless restrained and enjoined, Chi will continue to breach the 2022 Confidentiality Agreement with Arhaus, causing irreparable harm to Arhaus.

**SIXTH CAUSE OF ACTION**

**(Violation of Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*)**

139. Arhaus re-alleges and incorporates by reference each and every foregoing paragraph, as though set forth in full.

140. Arhaus' Trade Secrets and Confidential Information include information that derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use and are subject to efforts that are reasonable under the circumstances to maintain their secrecy, including confidential information regarding Arhaus' vendors.

141. While employed by Arhaus, Chi had access to sensitive, proprietary Arhaus Trade Secrets and Confidential Information, including but not limited to Arhaus' business plans and analysis, customer, client and prospect lists, vendor lists, Arhaus store information, customer/client documents and information (including contact information, preferences, margins, order guides, and order histories) internal reports, internal business-related communications, marketing plans and strategies, research and development data, data compilations regarding buying practices, human resources information obtained from a confidential personnel file (such as internal evaluations of the performance, capability and potential of any Employee of Arhaus affiliates), financial reports, operational analysis data, methods, techniques, technical data, know-how, innovations, un-patented inventions, and trade secrets; and information about the business affairs of third parties (including, but not limited to, clients and acquisition targets) that such third parties provide to Arhaus in confidence.

142. Chi acknowledged that the foregoing information constitutes Arhaus Trade Secrets in (A) 2021 Consulting Agreement, (B) 2021 Confidentiality Agreement, (C) Code of Conduct, (D) Employee Handbook, and (E) 2022 Confidentiality Agreement.

143. Following her separation from Arhaus, Chi disclosed Arhaus' Trade Secrets and Confidential Information, including confidential information regarding Arhaus vendors, with her associates at RH, who is using them to Arhaus' detriment.

144. Chi has retained and used Arhaus' Trade Secrets and Confidential Information and has disclosed these trade secrets for the benefit of persons other than Arhaus.

145. Chi was aware that she was under a duty not to disclose or use Arhaus' Trade Secrets or Confidential Information. She signed or acknowledged no less than five documents during her time at Arhaus acknowledging this duty.

146. Chi has not been authorized by Arhaus to use or disclose Arhaus' Trade Secrets or Confidential Information after her employment or for the benefit of persons other than Arhaus.

147. As a direct and proximate result of Chi's misappropriations, Arhaus has suffered and continues to suffer actual damages in an amount to be proven at trial, in excess of the minimum jurisdiction of this Court.

148. As a further direct and proximate result of Defendant's misappropriation, Defendant has been, individually and/or in concert, unjustly enriched in an amount to be proven at trial, in excess of the minimum jurisdiction of this Court.

149. Chi's conduct as described above was willful and malicious and done with the deliberate intent to injure Arhaus and benefit herself and others, causing injury to Arhaus. Such actions were malicious, oppressive and constituted despicable conduct in conscious disregard of Arhaus' rights, and by reason thereof, Arhaus is entitled to reasonable attorneys' fees and costs, and punitive damages under Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*

150. Unless restrained and enjoined, Chi will continue to misappropriate Arhaus' Trade Secrets and Confidential Information, causing irreparable harm to Arhaus.

**PRAYER FOR RELIEF**

**WHEREFORE**, Arhaus, LLC prays for judgment against Defendant Chi as follows:

1. That the Court enters a preliminary and permanent injunction enjoining Chi and her officers, agents, servants, employees, representatives, and all persons acting in concert with them, from committing or performing, directly or indirectly, any and all of the following acts:

2. Disclosing or using Arhaus' Trade Secrets and confidential information, including without limitation Arhaus' information that derives independent economic value from not being generally known or readily ascertainable by proper means by others who can obtain economic value



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

from its disclosure or use and is the subject of reasonable efforts to maintain its secrecy ("Trade Secrets");

3. Disclosing or using Arhaus' Confidential Information that does not include Arhaus' Trade Secrets, but which Arhaus employees and business partners contractually agree to hold in the strictest confidence and not disclose at any time, in any manner, including without limitation information, or a compilation of information, in any form (tangible or intangible), related to Company's business that Company has not made public or authorized public disclosure of, and that is not generally known to the public or to other persons who might obtain value or competitive advantage from its disclosure or use;

4. Retaining originals or copies of documents or records (whether in electronic or paper format) of any of Arhaus' Trade Secrets and Confidential Information, and any other information in any format taken from Arhaus which were created by using any Trade Secrets and Confidential Information;

5. Retaining any Arhaus equipment and/or digital images that incorporate Arhaus' Trade Secrets and Confidential Information;

6. Violating the terms of Chi's 2021 Confidentiality Agreement and 2022 Confidentiality Agreement with Arhaus, including but not limited to ¶¶ 1.1, 1.2, 2.2, and 2.3, by enforcing Chi's 2022 Confidentiality Agreement in accordance with California law;

7. Identifying herself as consulting with, authorized by, acting in agency for, employed by, or otherwise affiliated in any manner with Arhaus;

8. Using Arhaus' Trade Secrets and Confidential Information to provide services to, consult with, obtain or retain employment with, or otherwise work with Arhaus customers, business partners, or vendors;

9. Using Arhaus' Trade Secrets and Confidential Information to provide services to, consult with, obtain or retain employment with, or otherwise work with RH or any competitor of Arhaus;

10. That the Court enters a preliminary and permanent injunction enjoining Chi and her officers, agents, servants, employees, representatives, and all persons acting in concert with them

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

from using Arhaus' Trade Secrets and Confidential Information, including Arhaus' current customers, business partners, and vendors.

11. That Arhaus be awarded damages in an amount to be proven at trial, plus interest thereon at the legal rate until paid in full;

12. That Arhaus be awarded its costs incurred herein and its reasonable attorneys' fees, pursuant to the 2022 Confidentiality Agreement;

13. That Arhaus be awarded all relief provided for under California Civil Code § 3426 and under California Labor Code § 2860.

14. That Arhaus be awarded actual damages and injunctive relief under the Defend Trade Secrets Act, 18 U.S.C. § 1836;

15. That Arhaus be awarded punitive damages under California Civil Code § 3294.

16. That the Court grant such other and further relief as the Court deems just and proper.

Dated: December 18, 2025

Respectfully submitted,
BAKER & HOSTETLER LLP

By: */s/Christina J. Moser*
Christina J. Moser

Attorneys for Plaintiff
ARHAUS, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES