**Pages 1 - 8**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

| | |
|---|---|
| ARHAUS, LLC,<br><br>Plaintiff,<br><br>VS.<br><br>LISA CHI, et al.,<br><br>Defendants. | **NO. C 25-06233 JD** |

San Francisco, California
Thursday, February 12, 2026

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:

BAKER & HOSTETLER LLP
127 Public Square - Suite 2000
Cleveland, Ohio 44114
**BY: RUTH HARTMAN, ATTORNEY AT LAW**

600 Montgomery Street - Suite 3100
San Francisco, California 94111
**BY: SAFINA MOTIWALA, ATTORNEY AT LAW**

For Defendants:

ILLOVSKY GATES & CALIA LLP
1611 Telegraph Avenue - Suite 806
Oakland, California 94612
**BY: EUGENE G. ILLOVSKY, ATTORNEY AT LAW**
**CHRISTOPHER S. HALES, ATTORNEY AT LAW**
**KEVIN CALIA, ATTORNEY AT LAW**

Remotely Reported: Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
U.S. District Court - Official Reporter

**Thursday - February 12, 2026** **12:13 p.m.**

**P R O C E E D I N G S**

**---000---**

**THE CLERK:** Calling civil 25-6233, Arhaus LLC versus Lisa Chi.

(Pause in proceedings.)

**MS. HARTMAN:** Good afternoon, Your Honor, Ruth Hartman on behalf of Arhaus, the Plaintiff.

**MS. MOTIWALA:** And Safina Motiwala on behalf of Arhaus. Thank you.

**MR. CALIA:** Good afternoon, Your Honor, Kevin Calia on behalf of Defendant Lisa Chi, and with me at counsel table are Eugene Illovsky and Christopher Hales.

**THE COURT:** Okay. You are back on round two of the complaint. So, last time there was an issue with the fact that the overseas people were all publicly disclosed and that's all that was there. And now you have added a group of domestic people; right?

**MS. HARTMAN:** That's not just it, Your Honor, but that's part of it. We also have alleged that as to the domestic people, there are certain non-public information regarding those entities that are trade secrets and that non-public information --

**THE COURT:** Yeah, I get that.

**MS. HARTMAN:** Okay.

**THE COURT:** So, I don't know. Defendant, seems like it is enough for Counts One and Six at this point.

**MR. CALIA:** Well, Your Honor --

**THE COURT:** It's a 12(b)(6). Is it plausible under *Iqbal*? They fixed the big thing you were worried about, which is all of this is public when it was foreign. Now it is not. Certainly this type of information is within -- well within the zone of being trade secret information. So, what's the issue?

**MR. CALIA:** So we don't think it has been fixed, Your Honor, for two reasons. Just addressing the domestic people, first of all, there are no new domestic vendors referenced in any of the factual allegations of the complaint. If you look at --

**THE COURT:** Keep your voice up a little bit.

**MR. CALIA:** Speak up?

**THE COURT:** Speak more loudly. You can pull that thing towards you too.

**MR. CALIA:** I apologize Your Honor.

**THE COURT:** That's better, yeah, good. Okay.

**MR. CALIA:** So, there are no new vendors. It is the same three vendors as in the prior complaint. If you look at the first amended complaint side by side with the second amended complaint, the misappropriation section is the same three people; Romania, Paris, Vietnam.

The second issue is one of the facts that needs to be

alleged to have a trade secret claim is the use or the disclosure of the non-public information. Here, there is just a laundry list of information that might be non-public like pricing information but there's no allegation --

**THE COURT:** That's the problem. It might be. It might not be. We are just at 12(b)(6); okay. Can they walk through the door. You can blow them out of the water later on the fact issues, but I can't dismiss the complaint on those grounds.

**MR. CALIA:** Well, I would just ask you to take another look at the *Multifab* case, which is the most important case, which says that if the vendors are publicly known, then a reasonably diligent competitor could call up the vendor and ask questions.

**THE COURT:** The "if" is a fact issue. That's the thing. I'm not going to just take your word for it in a brief, that they are publicly known. Look, I think One and Six are probably going to go forward. I'm not a hundred percent committing yet but probably.

I have to tell you, the conversion claim -- she gave you the computer back. What's the -- I don't see what you are doing with that.

**MS. HARTMAN:** Well, that's not just it, Your Honor, because there are certain information on the computer that she -- well, we are undertaking a forensic analysis right now

to try to determine what she retained. She retained it for 69 days. And you are correct, this is the fact stage. We don't know what was taken from that laptop. We had to engage an expert.

**THE COURT:** That's the problem. You have to have a plausible basis in fact, and you are saying you are still trying to figure it out.

First of all, I think -- when you return a physical object, I'm not convinced that a conversion claim will stand. But in any event, you can't just say, Well, we are still looking at the evidence to figure out whether she converted anything. So, it is not going to work for 12(b)(6). So, that's dismissed.

Look, you can come back later and ask if you find facts that warrant an amendment. You are going to have to ask at that point because time to amend voluntarily will probably be closed. You can ask but that's dismissed without prejudice if you want to make a showing later.

And the Labor Code Section 2860 looks like you agree. It's not a private cause of action. So, is that out?

**MS. HARTMAN:** No, Your Honor. That is a correct cause of action. She did retain information that belonged to her employer.

**THE COURT:** You said in your brief that Section 2860 does not create a private right of action. It is docket

number 49 at page 11. So, what are you telling me now?

**MS. HARTMAN:** Well, I mean, I think alone it is coupled with the conversion. It is coupled with --

**THE COURT:** You don't couple it. She either has a right to sue or she doesn't under section -- Labor Code Section 2860. You said in your brief she doesn't have a private cause of action. I agree with that. So, that is dismissed with prejudice.

And, all right. I'm still a little mystified by why you can't work this all out.

**MS. HARTMAN:** Well, Your Honor --

**THE COURT:** Have you all been talking, trying to get this thing done? Defendant, what -- I mean, someone -- your client is spending a lot of money on this. Why can't you all work this out?

**MR. CALIA:** Well, Your Honor, I mean, they have put in at the preliminary injunction briefing an e-mail that was basically their offer. It is with their reply declaration. And it said they want her to not contact any vendors that RH didn't have a pre-existing relationship with, whether or not they are publicly known, whether or not they are listed in these commercial databases. And that's something she can't agree to and --

**THE COURT:** I know. That's their starting position. What have you done since then to talk and reach a reasonable

compromise? Have you had any meetings, the two of you?

**MS. HARTMAN:** Your Honor, we have not. In our proposed case management order, we do have a provision that said we will engage in preliminary ADR within 90 days of filing the second amended complaint. So, we can certainly start discussing potential mediation.

**THE COURT:** Well, who would you like to use? Do you have anybody in mind?

**MS. HARTMAN:** Not at this moment.

**THE COURT:** All right. Well, pick somebody.

**MS. HARTMAN:** Okay.

**THE COURT:** Listen, you know, these trade secret cases start taking on a whole family law dimension where people are angry and emotional; and it is disproportionate to the legal issues in the case. You have to get over it. Both sides have to get over it; okay.

That's your job as the lawyers. That's why you are called counselors. You counsel your clients to say, "I know you are super angry that somebody did this and you feel like they ripped you off. Get over it. We have got to deal with this case."

Otherwise, you are going to spend a mountain of money on both sides and it is going to be a waste. All right. These things spin into divorce law cases very quickly. We are just not going to do that.

So, you pick a mediator one week from today. File a joint statement telling me who. And then you get booked. I know they are busy -- my sense is they are busy. You get on their calendar and you get this thing mediated. I don't think -- the facts don't seem particularly unclear to anybody. So, you should have a lot to work with without waiting on a ton of discovery to have a chat. Okay.

**MS. HARTMAN:** Okay. Thank you, Your Honor.

**THE COURT:** Anything else, Defendant?

**MR. CALIA:** No. Thank you, Your Honor.

**THE COURT:** Okay. Thanks.

**MS. HARTMAN:** Your Honor?

**THE COURT:** Yes.

**MS. HARTMAN:** Oh, I'm sorry. We did submit a proposed case management order.

**THE COURT:** Oh, yes, I will issue an order.

**MS. HARTMAN:** Okay.

**THE COURT:** Whether it bears any resemblance to yours, remains to be seen. I have 300 other cases. I will post a scheduling order.

**MS. HARTMAN:** Thank you, Your Honor.

**MR. CALIA:** Thank you, Your Honor.

(Proceedings adjourned at 12:21 p.m.)

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: March 10, 2026

Marla Knox

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter