ILLOVSKY GATES & CALIA LLP

1611 TELEGRAPH AVENUE
SUITE 806
OAKLAND, CALIFORNIA 94612

illovskygates.com
o: 415.500.6640

October 16, 2026

**VIA ECF**

The Honorable James Donato
San Francisco Courthouse, Courtroom 11, 19th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

Re: *Arhaus, LLC v. Lisa Chi*, Case No. 25-cv-06233-JD

Dear Judge Donato:

Arhaus, LLC brought this case as a trade secret case. But with fact discovery closed (see ECF Nos. 58, 77, and 82), Arhaus has now stated in verified interrogatory responses that it "plans to dismiss" its state and federal trade secret claims against Ms. Chi "without prejudice." Nevertheless, as the Court warned at an early hearing, "these trade secret cases start taking on a whole family law dimension where people are angry and emotional" and then raise issues "disproportionate to the legal issues in the case." ECF No. 64 at 7.

The Court's comments were right on point. Indeed, in text exchanges from the days after Ms. Chi resigned, Arhaus's CEO John Reed called Ms. Chi "very greedy," a "traitor," and a "bitch" who "screwed me like no one ever" and who he thought should be sent "to jail for intellectual property" without any evidence that Ms. Chi did anything other than decide to work for a competitor. *See* ARHAUS0004864, 4873, 4879. Accordingly, throughout this litigation, Arhaus has strained to find any avenue to keep its vendetta against its former employee alive.

As its trade secret theories crumbled, Arhaus switched course and served multiple subpoenas on nonparties, including Epiq eDiscovery Solutions, Inc., the forensic consultant that Ms. Chi's counsel at Sheppard Mullin hired to preserve evidence on devices issued to Ms. Chi by Arhaus. Epiq's work has already been the subject of multiple letter briefs that Arhaus has filed before this Court repeatedly raising overlapping issues. (ECF Nos. 84, 95, 105.) In these letters, Arhaus claims that Epiq created images of the "Arhaus Devices that overwrote key metadata showing whether Chi accessed Arhaus files after May 16." (ECF No. 84; *see also* ECF No. 95.)

**<u>The Parties' Conferences in Response to ECF No. 86</u>**

In Docket No. 86, the Court gave narrow instructions regarding Docket Nos. 83 (filed by Ms. Chi) and 84 (filed by Arhaus), directing the parties "to meet and confer … on the production of documents and information sufficient to disclose: (1) whether defendant Chi accessed Arhaus files after May 16, 2025; and (2) the specific data and metadata Epiq deleted from the Arhaus devices it received from Chi." (ECF No. 86.) The Court added that "the letters are denied in all other respects." (*Id.*) The parties conferred on September 9 and 11 and again on September 28.

**Ms. Chi Has Already Produced the Arhaus Device Information**

During the conferences, Ms. Chi's counsel directed Arhaus to already-produced files that contain the information Arhaus sought in its letter brief and confirmed that Ms. Chi is not asserting privilege over any documents concerning information referenced in the order.

In May 2026, Ms. Chi produced spreadsheets that listed every file on the Arhaus Devices along with multiple metadata fields. Admittedly, the access dates in these spreadsheets seemed to indicate that those access dates were overwritten on the day of the imaging, May 27, 2025.

The parties then negotiated a stipulation to provide Arhaus with two forensic images of each Arhaus-issued device created by Epiq, including the original images captured on May 27, 2025. The Court entered this stipulation as an order. (ECF No. 66.) These images contain all the data captured from each device by Epiq, and the Court's order permitted Arhaus access to everything except a handful of paths that contained text messages. Arhaus reserved its rights to make further requests regarding text messages or a third image of the laptop but never did so.

After receiving the forensic image, Arhaus continued to argue that metadata regarding access dates had been overwritten by Epiq during the imaging process. As part of providing the forensic images, however, Ms. Chi had included a separate database file created by the imaging tool that captured the last access dates as they existed immediately before the imaging process began. Arhaus's expert had apparently failed to examine this database file before Ms. Chi's counsel pointed it out to Arhaus.

Arhaus has now shifted to complaining about a handful of files that appear to have been modified by a system process when Epiq logged into the laptop before initiating the imaging process, and that therefore reflect the date of Epiq's login and subsequent collection. The exact files at issue and the possible system processes that can result in changes to the last accessed date metadata field will be the subject of expert testimony. Arhaus served an expert report on September 30, and Ms. Chi intends to serve a rebuttal report on October 30. In any event, Ms. Chi was not in possession of the laptop at the time these files were marked as having been accessed. Expert analysis of the log files available in the images will show a complete lack of evidence that Ms. Chi accessed any of these files even though relevant log files contain data going back to before Ms. Chi's resignation on May 16.

Regardless, Arhaus has in its possession the documents and data regarding last access dates for the Arhaus Devices. Neither Ms. Chi nor Epiq is withholding materials on this issue. Nonetheless, Arhaus is demanding further discovery in hopes it will find a flaw with the May 27 images, no matter how small or irrelevant. Some imperfection in the imaging process or the metadata captured cannot demonstrate that Ms. Chi had an intent to deprive Arhaus of any data or metadata.

**The "Epiq Asset Report"**

Arhaus also seeks further discovery by mischaracterizing the so-called "Epiq Asset Report." This spreadsheet is a list of more than 10,000 file names that appeared as links in Ms. Chi's personal Gmail addresses (sometimes called "modern attachments"). Such links can be to things like Google documents that multiple people can access to collaboratively work on the shared

document. Ms. Chi first provided the list to Arhaus on April 30, 2026, and then provided another version with additional date fields on May 6, 2026. Many of the documents were no longer accessible to Ms. Chi at the time of collection (as reflected by zero-byte entries for those files). Approximately 100 of these links were shared with Ms. Chi by Arhaus employees. Ms. Chi therefore produced the emails that contained the links to those documents, which show: who shared the document with Ms. Chi and when; the name of the document at the time it was shared; and whether other email addresses were copied at the time. Ms. Chi never reviewed or took possession of any documents that Epiq collected by following the links. We requested that Arhaus investigate with the owners of the documents whether additional metadata was available, but Arhaus never provided any such metadata. Arhaus has long had the information it needs.

**Arhaus's Challenges to Privilege Log Entries**

Arhaus tries to paint its challenges to a handful of privilege log entries as somehow related to the Court's August 24 order and thus "untimely." But Arhaus's letter makes clear that every challenged entry was first made on August 21. Ms. Chi's later efforts to provide more detailed descriptions of certain attachments have nothing to do with the Court's August 24 order.

Nevertheless, Ms. Chi is willing to withdraw her assertion of privilege over certain attachments. She will produce the backup instructions and authorization form (items 1 and 2). Although invoices that "reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege," Ms. Chi has determined that the descriptions in the challenged invoices (items 18 and 26) are high-level enough that they do no more than provide the "general nature of the services performed." *See Clarke v. American Commerce Nat. Bank*, 974 F.2d 127, 129-30 (9th Cir. 1992). None of this information is "highly pertinent." Arhaus already knows the general nature of the legal services performed, though it consistently mischaracterizes them.

The Court should decline to engage in an ill-defined and unjustified *in camera* review project for the remaining items in the chart or any items not listed in Arhaus's chart. Item 25 is a three-line redaction in an email directly between lawyer and client reflecting legal advice. Item 21 is a large, multi-tab spreadsheet reflecting forensic analysis of laptop image 1 performed by Epiq at the direction of counsel that reflects choices about what to analyze. Arhaus is not entitled to this analysis; it has its own expert who can perform (and has performed) his own analysis. (*See* ECF No. 83 at 3 (citing cases).)

**Productions from Ms. Chi's Personal iPhone**

Ms. Chi has produced a massive amount of data from her personal cell phone during discovery, including text messages, text message attachments, calendar entries, and notes. Now, Arhaus speculates that it could hunt for some further metadata if Ms. Chi produced raw images of all data on the personal phone instead. Early on, Ms. Chi's counsel offered to engage a neutral expert that could perform searches as directed by both parties on data collected from both Arhaus-issued and personal sources. Arhaus refused. It is far too late now to reinvent the approach to searching for responsive data from Ms. Chi's personal cell phone.

Sincerely,

Kevin Calia
Attorney for Defendant Lisa Chi